## ROYAL BAKING POWDER CO. v. HESSEY
### and three other cases.
### Nos. 3754–3757.

Circuit Court of Appeals, Fourth Circuit.
April 2, 1935.

Carroll G. Walter, of New York City (Patterson, Eagle, Greenough & Day, of New York City, on the brief), for appellants in Nos. 3755 and 3756.

Herbert M. Brune, Jr., of Baltimore, Md. (Brown & Brune, of Baltimore, Md., and Davis, Polk, Wardwell, Gardiner & Reed, of New York City, on the brief), for appellant in No. 3754.

Neil P. Cullom, of New York City (J. Purdon Wright, of Baltimore, Md., Henry W. Steingarten, of New York City, and W. Frank Every, of Baltimore, Md., on the brief), for appellant in No. 3757.

Malcolm H. Lauchheimer, of Baltimore, Md. (Sylvan Hayes Lauchheimer, of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

These appeals are from orders of the District Court disallowing claims filed by appellants against the estate of L. Van Bokkelen, Inc., a Maryland corporation, which was adjudicated bankrupt upon its voluntary petition, filed March 13, 1931. The four claims involved were all debts in the first instance of the bankrupt's predecessors in business, and the presence of common questions renders it desirable to dispose of the cases in a single opinion.

The bankrupt corporation was engaged in the business of importing and exporting fruits, vegetables, and other kinds of merchandise between the United States and South America. Offices were maintained in New York City, Buenos Aires, and Montevideo. Prior to November 1, 1929, when the corporation acquired the business, it had been conducted in the first instance as the individual business of Libertus Van Bokkelen, a resident of Argentina, who was represented in New York by his brother, Walter Van Bokkelen. Libertus Van Bokkelen died February 9, 1929, and the business was carried on for a short time thereafter by his estate, under the name "Sucescion L. Van Bokkelen"; Walter Van

Bokkelen assuming the active management. On or about August 9th of the same year, the widow of Libertus, who had obtained the ownership of the business through assignment of the interest of certain other heirs and by virtue of an adjudication in the Argentine, transferred the entire business by bill of sale to Walter Van Bokkelen, for the stated consideration of 50,-000 pesos, Argentine paper currency. It was he who sold it to the bankrupt corporation in November, 1929.

Libertus Van Bokkelen, during his life, had borrowed large sums of money for use in the business and had incurred other liabilities therein. Four items of this indebtedness are involved in the claims here: (1) Royal Baking Powder Company, one of the claimants, whose products Libertus Van Bokkelen sold in South America, loaned him $150,000 on January 18, 1929. This debt was evidenced by his demand note of that date, signed also by Walter Van Bokkelen as comaker. Subsequent credits for commissions reduced the total alleged indebtedness to $116,287.11, including interest to March 13, 1931, the date of adjudication in bankruptcy. (2) Previously, a loan of $125,000 had been made to Libertus Van Bokkelen by the trustees of a trust established in England, this debt being evidenced by a note to claimants Kennerly-Hall and Stirling, the surviving trustees. The note was indorsed by Walter Van Bokkelen, against whom judgment was secured May 6, 1930. (3) The claim of National Cold Storage Company, which amounts to $16,-726.99, with interest, is based upon charges to the account of Libertus Van Bokkelen for storage and handling of merchandise at various times. (4) The claim of Grace E. Lowendahl likewise arises out of a loan to Libertus Van Bokkelen, made by her assignor and evidenced by a note upon which Walter Van Bokkelen was bound as indorser. A judgment in the amount of $222,-594.12 against the bankrupt corporation was obtained by the claimant under circumstances later to be detailed, and she founds her claim principally thereon. The trustee, though admitting the liability of Libertus and Walter Van Bokkelen for these debts, resists proof of the claims on the ground that they do not represent debts of the bankrupt.

■ The claimants seek to establish the liability of the bankrupt corporation for these debts upon certain common grounds that rest upon the circumstances under which Walter Van Bokkelen transferred to the corporation the business he had acquired. The first of these contentions is that irrespective of any fraud, the bankrupt became liable for the debts of Libertus to the extent of the assets which it purchased and received. It is pointed out that in Strongin v. International Acc. Bank, 70 F.(2d) 248 (C. C. A. 2), it was held that the assets in question belonged to the estate of Libertus and did not belong to Walter. But it is quite clear that the court there had before it much evidence which is not in the present record although that decision was rendered before the decision of the District Court in the pending case. We must confine ourselves to the showing here that on August 9, 1929, the widow of Libertus sold the business to Walter. She had previously acquired the interests therein of Libertus' parents, and it had been adjudicated in the proceedings of the estate probated before the Court of First Instance in Civil Causes in the City of Argentina, that the business belonged to her with the right to dispose of it.

The claimants say that it is immaterial whether Walter or the estate was the owner of the assets when they were transferred to the bankrupt corporation, because in either event, they had previously belonged to the estate, and were liable for the debts thereof, and it does not matter whether the bankrupt bought them from the heirs or distributees of the estate, or from one who had himself bought them from the heirs or distributees. The point urged is that the bankrupt could get no better title than the vendor of the assets, who had acquired them subject to the rule that the assets of a decedent are primarily liable for his debts; and reference is made to such cases as Borer v. Chapman, 119 U. S. 587, 7 S. Ct. 342, 30 L. Ed. 532, and McClellan v. Carland (C. C. A.) 187 F. 915, and the general rules set out in 18 C. J. 897, 898 and 953. These propositions cannot be denied, but they have no application to the facts before us. We are not dealing with property acquired from an executor de son tort, and from one who was merely the distributee of an estate, but from one whose ownership of the property had been adjudicated. In the absence of further proof, we are not at liberty to question the validity of that holding.

■ The second contention is that the agreement of sale from Walter to the corporation, executed by the parties in New York

on November 1, 1929, was fraudulent under the Debtor and Creditor Law of New York, §§ 271, 272 and 273 (Consol. Laws N. Y. c. 12), which provide in substance that every conveyance is fraudulent as to creditors, without regard to actual intent, when made by a person who is or will be thereby rendered insolvent, if the conveyance is made without a fair consideration. The facts are discussed at length in an effort to show that the District Judge was wrong in his finding (see 7 F. Supp. 639, 645) that Walter was solvent on November 1, 1929. The point is not without difficulty for the facts are intricate, and an estimate of values necessarily conjectural when made a long time after the crucial date, which occurred shortly after the beginning of an extraordinary collapse of business in this country. In our opinion, it is not essential to make a finding on the point, and we shall assume, for the purpose of the argument, that Walter was then insolvent. It is necessary, however, for the claimants to go a step further under the statute and to show that the bankrupt corporation did not pay a fair amount for the property which it received. The amount paid was $275,998.07, of which $124,000 was paid for 51 per cent. of the stock of a subsidiary corporation, Van Bokkelen & Rohr, Inc., and $151,998.07 for the goods on hand. It is not suggested that $151,998.07 was not a fair amount for these goods, since they were taken at inventory cost, but it is said that $124,000 was inadequate for the stock of the subsidiary corporation because this sum was arrived at by excluding the good will, trade-marks, and trade-names in determining the liquidated value of the total capital stock. In answer to this it is sufficient to say that there is nothing in the record to show that any other person would have given any more for the assets transferred. The active head of the business, who had owned the majority of the stock, was dead. The time of the purchase was November 1, 1929, immediately after the slump in the market had begun. The business was in need of financing, and it was considered a stroke of good fortune when the Baltimore & Ohio Railroad was found willing to invest $500,000. We cannot take seriously the fanciful valuation of $3,000,000 placed by the incorporators on 30,000 shares of capital stock now said to represent the good will of an insolvent concern. The stock was issued as a bonus, 51 per cent. to the Baltimore & Ohio Railroad interests, and 49 per cent. to Walter. It was subject to $500,-000 of preferred stock, and gave the active manager a share of the future profits if any should be earned. As it turned out, there were no profits.

A third argument is that the transfer was fraudulent in law irrespective of insolvency or the fairness of consideration, because it hindered and delayed the creditors of the transferor; and reliance is had upon decisions invalidating transfers because the parties to the transactions, although innocent of fraudulent intent, must have known that their creditors would be hindered and delayed thereby; as in Means v. Dowd, 128 U. S. 273, 281, 9 S. Ct. 65, 32 L. Ed. 429, where there was an assignment to trustees for the benefit of creditors, or Shapiro v. Wilgus, 287 U. S. 348, 53 S. Ct. 142, 77 L. Ed. 355, 85 A. L. R. 128, where there was a transfer to a corporation so that a receiver might be appointed for the corporation; or First National Bank v. Flershem, 290 U. S. 504, 54 S. Ct. 298, 78 L. Ed. 465, 90 A. L. R. 391, where the corporation secured a judicial sale of its assets under a plan of reorganization. These cases are not applicable here, for it does not appear that there was concert of action of the persons interested in the bankrupt corporation to hinder and delay the creditors by means of the sale. The Baltimore & Ohio Railroad had no motive to hinder or delay the creditors, having no obligation to them; and it is not reasonable to suppose that it knowingly jeopardized its investment by putting it into a corporation in such a way as would be merely helpful to Walter and prejudicial to itself. The fair value of the assets, in the form of money, was paid into the hands of the owner, and the money was actually used in paying certain of the creditors. There is no evidence that the railroad or corporation had anything to do with the making of preferential payments rather than a pro rata distribution.

It is finally contended on this branch of the case that the transfer to the bankrupt corporation was void as to the complaining creditors because of the failure of the parties to the transfer to comply with the New York Bulk Sales Act, section 44 of the New York Personal Property Law (Consol. Laws N. Y. c. 41), which provides in substance that the parties to a transfer in bulk of any part or the whole of any stock of merchandise pertaining to the business of the seller, otherwise than in the ordinary course of trade, shall make an

inventory of the quantity and price of each article at least five days before the sale; and unless the purchaser shall at least five days before taking possession thereof or paying therefor, notify every creditor of the seller on a complete list to be furnished by the latter of his creditors and indebtedness; and further providing that any purchaser who fails to conform to the act, shall upon application of any of the creditors be held accountable to them for all the merchandise so purchased. The District Judge held that this statute was inapplicable to the transfer and that the passage of title was governed by the law or situs of the assets in Buenos Aires where the assets were situated.

We agree with this finding. It is contended that it is in conflict with the general rule that the law of the place of contracting determines the validity and effect of a contract. The holding of the District Court, however, does not violate this rule. The question is really one of conflict of laws, whether, when a contract of sale is made in one place, and the articles transferred are in another jurisdiction, the law of the former or the latter should be applied with reference to the claims of creditors. The Final Draft of Restatement of Conflict of Laws, §§ 255 and 256, are applicable. They provide in substance that the formalities necessary for the validity of a conveyance of a chattel, and whether it is made by a party who has capacity to convey, is determined by the law of the state where the chattel is at the time of the conveyance; and it is pointed out in comment b of section 256 that the validity of a conveyance as to third parties, as, for instance, when it is alleged to be in fraud of creditors, is to be determined by the law of the state where the chattel is situated. If the rule were otherwise, purchasers at the place where the merchandise is situated would be charged with knowledge of the laws of a foreign jurisdiction.

■ The validity of the claim of Grace E. Lowendahl is pressed on grounds that are nowise related to the other claims considered in this opinion. The basis of the claim is that the claimant instituted an action in the Supreme Court of New York County on May 4, 1930, to set aside as fraudulent the conveyance by Walter Van Bokkelen to the bankrupt corporation, alleging that she was an assignee of a creditor of Libertus Van Bokkelen. The action was tried on February 18, 19 and 20, 1931, and

on March 10, 1931, the presiding judge sent to the clerk of the court his proposed findings of fact and conclusions of law and his opinion. These papers, however, did not constitute the decision of the court, but served as the basis of the decision to be subsequently rendered in accordance with section 439 of the Civil Practice Act of New York, Hydraulic Power Co. v. Pettebone-Cataract Paper Co., 194 App. Div. 819, 186 N. Y. S. 1. On the following day, the claimant's attorneys prepared a decision and decree and served them on the opposite side. On March 12, the attorney for the bankrupt conferred with an officer of the Baltimore & Ohio Railroad Company, one of the creditors of the bankrupt, and also the holder of a large part of its stock through a subsidiary corporation, and it was determined that the bankrupt should file a voluntary petition in bankruptcy in the District Court of the United States for the District of Maryland, and this was done on March 13, 1931. The filing of a voluntary petition in bankruptcy was approved at a meeting of the board of directors held in Baltimore on March 13, 1931. Prior thereto, on March 12, 1931, certain of the other claimants interested in this case, to wit, Royal Baking Powder Company, National Cold Storage Company, and Kennerly-Hall, filed a petition of intervention in the New York case, and secured a stay restraining the trial justice from signing the decree and decision; and on March 16, counsel for the parties appeared before the trial justice who denied the motion to intervene and vacated the stay. The trial justice in New York was of the opinion under these circumstances that there was collusion in the filing of the petition in bankruptcy, and on April 1, he ordered that his decision and judgment be amended nunc pro tunc so that the date thereof should be March 12, 1931, and have the same force and effect as if it had been entered and filed on that date.

■ With respect to this claim, we are in accord with the conclusions stated by the District Court in its opinion, namely, that the claim was not provable as a "fixed liability, as evidenced by a judgment * * * absolutely owing" at the time of the filing of the petition in bankruptcy, in accordance with the provisions of section 63a (1) of the Bankruptcy Act, 11 USCA § 103 (a) (1), and that the nunc pro tunc judgment of the New York court was not provable as a "fixed liability, as evidenced

by * * * an instrument in writing, absolutely owing at the time of the filing of the petition" in bankruptcy, pursuant to the provisions of that section, and further, that there was no such fraud upon the bankruptcy court or collusion by the bankrupt and others, as would justify the allowance of the claim or the vacating and setting aside of the adjudication in bankruptcy.

The claim of the Royal Baking Powder Company rests on circumstances which it claims furnish additional grounds for the allowance of its claim against the bankrupt corporation. Libertus Van Bokkelen had acted as South American agent for Royal, and on January 18, 1929, had borrowed $150,000 for which he and Walter Van Bokkelen executed their joint note. There was an accompanying agreement which provided that the commissions earned by the agent should be credited on the note, and that Libertus would incorporate his business within a year and have the corporation issue its note for the balance then due. A month later, Libertus died, and then followed the management of the business by Walter Van Bokkelen, and finally his purchase thereof on August 9, 1929, and the subsequent formation of the present bankrupt corporation and the acquisition of a portion of the assets by it, Walter becoming the president. As we have seen, the corporation did not assume the liabilities of the old business and it did not derive any benefit from the loan which Royal had made to the preceding owner. Nevertheless it is claimed that the corporation is liable on the note because of the following circumstances: During the period between the death of Libertus and the formation of the bankrupt corporation, the agency continued and commissions were credited on the note against the loan as the agreement contemplated. Royal was not notified of the details of the transactions by which the Baltimore & Ohio Railroad became interested in the new corporation, but did have a conversation with Walter in November, 1929. The parties are in conflict as to what took place at this interview, but assuming the correctness of the statement made by witnesses for the claimant, its representatives were told that Walter had been successful in interesting the Baltimore & Ohio Railroad to provide the necessary financing for the corporation; that the indebtedness to Royal would be taken care of shortly; and that in the meantime, it was to continue to credit commissions against

the note. On December 3, 1929, the Royal received a letter from the treasurer of the new corporation containing the information that a Maryland corporation had been organized which had acquired the business of L. Van Bokkelen, and had outstanding $500,000 of preferred stock, acquired by New York banking interests, and 30,000 shares no par common stock issued in consideration for the business of L. Van Bokkelen, and that Walter Van Bokkelen was president of the company; that the former business was being transferred and taken over by the new company, and as soon as this was accomplished, a complete accounting statement would be furnished.

The contention is that through this form letter, Royal was led to accept the representations of Walter and to infer that this corporation was the one contemplated by the agreement accompanying the note, and would be liable for the amount of the note; and it is said, therefore, that the bankrupt cannot now deny either that it was a mere incorporation of the old business, or that Walter was authorized to make the representation on which the claimants rely. It is suggested that Royal was justified in supposing that all of the common stock of the company had been transferred to Walter and that he was not only the president but virtually the owner of the company.

█ We do not think that the statements in the letter justify these inferences. It was made clear that persons, who were in no way parties to the original agency agreement or to the note, had become interested in the business and had advanced a substantial sum of money to finance the new corporation, and the mere fact that the new corporation had acquired the old business did not justify or require the inference that the old liabilities were assumed. Nor was there any justification for the inference that all of the common stock of the company had been transferred to Walter Van Bokkelen. The mere fact that a substantial investment had been made by new parties would have suggested the inquiry as to what interest or control they acquired in the new corporation and what liability it assumed for the debts of the old business. Moreover, it is not without significance that the new corporation did not sign a note for the indebtedness to Royal; nor did Royal suggest that this be done in order to carry out the terms of its agreement with Libertus.

It may well be that Royal was misled by the statement of Walter that the note

would be taken care of, and by his action in permitting the commissions to be credited upon the note without complaint, until he repudiated the transaction as a liability of the corporation in April, 1930. We think, however, that under the circumstances related, Royal was not justified, without inquiry, in its assumption that the new corporation, which was not a joint maker of the note or of the accompanying agreement, assumed the liability therefor. While the new corporation held out Walter Van Bokkelen as its president, and was responsible for such statements and actions as he made in that capacity in the usual course of business, the transaction under consideration was one out of the ordinary run, for if undertaken as Royal understood, it amounted to the assumption by the bankrupt corporation of a liability for which it received no consideration. The same principle was applied by this court in Drovers' & Mechanics' Nat. Bank v. First Natl. Bank, 260 F. 9, where it was held that a bank was not responsible for a debt incurred by its vice president previous to its formation, and was not estopped by his representations that the bank had assumed the debt, since his authority was merely to act as vice president in the usual course of business, and the circumstances were such as put the holder of the note on inquiry.

Finally, it is contended that the bankrupt is liable to Royal to the amount of its claim on the ground merely that it had taken over the business of Libertus, and had issued all of its common stock therefor. This proposition rests on certain cases which hold in substance that when a new corporation, which is substantially identical with the previous owners of the business, and merely a continuation of the old business, takes over its assets, a liability arises to pay its debts, as for instance, where a corporation composed of the same persons as a previous copartnership is formed for the purpose of carrying on the same business, issuing its stock to the members of the copartnership, as in DuVivier & Co. v. Gallice (C. C. A.) 149 F. 118, or where the transfer to the new corporation is made in the form of a lease, as in Reed Bros. Co. v. First Natl. Bank, 46 Neb. 168, 64 N. W. 701, or Helvering v. Wheeling Mold & Foundry Co. (C. C. A.) 71 F.(2d) 749, where the transferor, as a part of the transaction, stripped itself of its assets by making distribution to its stockholders without making provision for its creditors, both parties to the transaction being fully cognizant of all the circumstances. These cases, however, have no substantial similarity to the case at bar, for although the bankrupt corporation was organized to carry on the former business, there was a substantial change in the situation in that new capital was invested by new parties, a part only of the assets was acquired, and the transferor expressly agreed to be responsible for the outstanding obligations. We do not think that the cases cited are authority for holding, under the circumstances of the pending case, that the transferee corporation was responsible for the debts of its predecessor.

Affirmed.