John H. Farnham, J.
This is a motion by Motor Vehicle Accident Indemnification Corporation to stay arbitration. The matter comes on before the court by way of an order to show cause granted on August 6, 1962, some two months after service of a demand for arbitration. For purposes of convenience, we will designate the moving party by its initials MVAIC.
The facts briefly are these: Veronica Doyle, an infant, age 20, died as a result of injuries sustained in an accident which *872 occurred November 18, 1961, while a passenger in an automobile owned and operated by Sanford C. Harwood, an alleged uninsured motorist. Dorothy Doyle was granted letters of administration on the estate of the infant and in January, 1962, in her capacity as administratrix of said estate she caused a summons to be served upon Harwood, the named defendant. The summons was turned over to the Allstate Insurance Company by the defendant Harwood and returned to plaintiff’s attorney by that insurance company for claimed lack of insurance coverage.
Thereafter, on June 7, 1962, the MVAIC was served with the said demand for arbitration of the matter alleging negligence on the part of Sanford C. Harwood, an alleged uninsured motorist.
On inquiry, the court learns that this demand for arbitration grew out of a family protection clause in a liability policy which covered the deceased infant and was owned by a member of her family. This policy contained an arbitration provision involving the MVAIC.
The motion by MVAIC to stay the arbitration is based on three grounds which we will consider in the order in which they were presented by counsel and in their memorandum.
First, it is claimed that the plaintiff cannot comply with section 1448 of the Civil Practice Act because the deceased was an infant. The court believes this argument is untenable as the infant is deceased and the party seeking arbitration is an adult administratrix.
The second ground of attack on arbitration is that a summons was served on the alleged uninsured motorist and that, therefore, section 613 (subd. [a], par. [3]) of the Insurance Law is a bar to arbitration. See Matter of MVAIC (Koenig) (199 N. Y. S. 2d 964) which supports this view. It is true that an action had been commenced in this case, but not pressed to judgment nor does it appear that a complaint ever was served nor was any answer ever submitted on behalf of Harwood. In short, it is apparent that the action never has been prosecuted beyond the original service of the bare summons and presumably has been abandoned.
The third point raised by MVAIC1, which in the court’s opinion is linked to the second point is that a valid question of fact exists as to whether Harwood was insured by the Allstate Insurance Company at the time of the accident.
A hearing was held before this court on August 13, 1962, and proof taken with the view that the court could make a determination as to whether a valid question existed on this *873 point to require a jury trial. (See Matter of Rosenbaum [Amer. Sur. Co. of N. Y.], 11 N Y 2d 310.)
The following proof in brief was adduced at the hearing:
William C. Blowers testified that he is an agent for the Allstate Insurance Company and that he took and prepared the application of Sanford Harwood, driver of the ill-fated automobile. The application was signed by Sanford Harwood, in turn an infant, he having been born on May 1, 1943. There can be no doubt that the application in question marked Exhibit 1 at the hearing on its face clearly states that it is an application to New York Automobile Assigned Risk Plan for liability insurance. Exhibit 2 offered and received at said hearing was a photostatic copy of a check of Rudolph Karasek, made payable to Sanford Harwood, dated November 16, 1961, in the amount of $70. The check was indorsed by Sanford Harwood and evidently delivered to William Blowers for intended premium purpose. Mr. Blowers in turn prepared and signed Exhibit 3, offered and received at said hearing, which reads as follows: “11/15/61 — Received payment of seventy dollar on assigned risk app. from Sanford Harwood. William Blowers ”. (Italics supplied.) The documentary evidence adduced at the hearing consisted also of Exhibit 4 certified mail envelope addressed by Mr. Blowers and postmarked Syracuse, December 6, 1961, wherein he returned to Mr. Harwood with his communication marked Exhibit 5 his “check for deposit on the application for auto insurance in the assigned risk plan
The court feels that if a jury trial were had on the question of coverage, a directed verdict on the facts already adduced properly would be decided against Harwood.
In deciding the question of insurance in the manner above indicated, there remains the question of the effect of section 613 of the Insurance Law above cited.
Inasmuch as there is the claim of an uninsured driver in the picture, it would seem senseless to stay arbitration merely because an unprosecuted action had been started against the uninsured driver. In the light of the dearth of decided cases on this point, it would seem to the court that to stay arbitration under these circumstances would thwart the plaintiff completely and the court does not believe that such procedure ever was intended by the Legislature. To stay arbitration without giving any guide to the plaintiff’s future course would be unjust and fruitless. It would serve only to force plaintiff to procure a judgment that Harwood in effect was uninsured at the time of the accident and, therefore, the impediment of the Matter *874 of MVAIC (Koenig) (199 N. Y. S. 2d 964, supra) would be in existence and in the court’s opinion this should not be the case.
Throughout the comments herein set forth and during the court’s consideration of this motion, we cannot lose sight of the fact that the formal application for insurance coverage was in the assigned risk program as prepared by the insurance agent Blowers in the presence of Harwood and not an application for coverage in Allstate Insurance Company, the company for which he was an agent. Also, at the outset, as is necessary under the Assigned Bisk Program, agent Blowers stated in writing that he had tried and been unable to obtain automobile bodily injury and property damage liability insurance for applicant Harwood from at least two companies.
There was considerable discussion and proof adduced at the hearing concerning the payment by Harwood to agent Blowers of the sum of $70. It is obvious that such a sum would not even approach the total liability insurance premium for an 18-year-old driver. Bather would it appear to have been a percentage of the total premium on account as is required to accompany the formal application for assigned risk required coverage. Under the regulations such a percentage payment on account is necessary to accompany the assigned risk application for transmission to the New York office.
The testimony of witnesses Blowers and Sanford as developed at the hearing of August 13 was in sharp variance so far as the question of coverage with the Allstate Insurance C'ompany is concerned. The documentary evidence before the court, however, particularly Exhibits 1 and 3, bear out respondent’s contentions by clear documentary proof that Harwood made written application to New York Automobile Assigned Bisk for automobile insurance and received Blowers’ written receipt of $70 on the assigned risk application. The assigned risk coverage regulations are clear-cut and there can be no coverage in the Assigned Bisk Plan until approved by the New York office of the issuance of a policy. There was a question of Harwood’s learner’s permit number which was necessary before the application could be submitted by Blowers to the New York office. Harwood had “ flunked ” his learner’s permit test but later called Blowers and gave him the permit number. His unfortunate accident followed and the evidence is clear that at the time of the accident Harwood was operating an unregistered vehicle, to which misdemeanor charge he entered a plea of guilty. Blowers learned of the accident, and while there was a lapse of time before the $70 check was returned to him, *875 it was returned unused on December 6, 1961. See Exhibit No. 5. Obviously, under the circumstances the Assigned Bisk Plan in New York never designates the carrier’s identity which is necessary under section 12 of the regulations. The assured has no knowledge of the identity of his carrier until the policy is issued and delivered to him.
In the light of the foregoing, the motion to stay the arbitration is denied.