James C. O’Brien, J.
The movant sometimes referred to herein as “ petitioner ” was involved in an automobile accident with a car operated by one James White and owned by Justine White. The accident occurred on June 19,1961.
Petitioner was the named insured in a policy of automobile liability insurance issued to him by Newark Insurance Company. This policy contained what is known as the standard New York Automobile Accident Indemnification Endorsement. Such an indorsement is required on all such policies by subdivision 2-a of section 167 of the Insurance Law.
In order to collect the damages which he had sustained in the accident, allegedly due to negligence of James White, the petitioner, on August 14, 1961, commenced an action against James White, operator, and Justine White, the owner of the automobile involved in the accident.
After the commencement of the action and on November 9, 1961, petitioner’s attorneys received a communication from the attorneys appearing for Justine White, to the effect that they were disclaiming coverage on the part of defendant James White, on the ground that at the time the accident occurred James White was operating the automobile of Justine White without her permission. This was the first information received by petitioner that there was any question of coverage. There was no appearance for James White in the action and he remained in default.
On or about November 11, in compliance with the requirements of plaintiff’s insurance policy, he filed an affidavit of claim with the respondent. This constituted a notice to respondent that *716 there was a possibility that plaintiff might be the victim of an uninsured motorist within the meaning of article 17-A of the Insurance Law.
On November 30, 1961, the action commenced by petitioner was placed upon the calendar of Monroe County Court for trial. Petitioner notified respondent of this fact. Respondent could have, but did not, appear on behalf of James White. It was in the interest of the petitioner and also of respondent Motor Vehicle Accident Indemnification Corporation (hereinafter referred to as MVAIC) to establish on the trial that James White did have permission to operate the automobile of Justine White, in which case petitioner would be in a position to require the carrier of Justine White to pay him such damages as he could establish by reason of the negligence of James White. As will subsequently appear, the standard indorsement already referred to secures to the insured certain rights against uninsured or financially irresponsible motorists on compliance by the insured with various conditions and exclusions specified in the indorsement and one of these conditions and exclusions discussed in greater detail hereinafter, provides that the insured is barred from recourse to arbitration if he will have previously “ prosecuted to judgment ”, without written consent of MVAIC, his claim against the uninsured motorist. Concededly no written consent was obtained.
Having this condition in mind we now note what transpired in the action. The action was reached for trial in County Court, February 6,1962, and was tried. Both parties put in their proof. The court found on behalf of defendant Justine White that the automobile was operated by James White without her permission. On motion of the attorneys for Justine White the complaint was dismissed as to her on that ground and a judgment was entered in her favor, dismissing the complaint. At the same time on the proof offered by plaintiff, of the negligence of James White and plaintiff’s damage, the jury returned a verdict in favor of petitioner for $3,200, personal injuries, $112.94 for property damage and added $500 for exemplary damages. No judgment was entered in favor of the plaintiff (although concededly he was entitled to a judgment upon the verdict). Accordingly one judgment only was entered in the action and that was in favor of Justine White, establishing conclusively lack of coverage.
Petitioner then filed a notice of intention to enter judgment pursuant to section 614 of the Insurance Law. Apparently this was unsuccessful. Petitioner then commenced an action against *717 respondent to compel payment of petitioner’s claim. The complaint was dismissed by the County Court. Thereafter petitioner served notice upon respondent, requesting arbitration. This was based upon condition No. 6 in the policy which in effect states that if petitioner and respondent do not agree as to liability or amount of damages, they will proceed to arbitration.
CLAIM OF RESPONDENT
To support its refusal to enter into arbitration, respondent takes the position that petitioner comes within the language and meaning of exclusion (b) of the indorsement above specified, which states “ (b) This endorsement does not apply to bodily injury to an insured or care or loss of services recoverable by an insured with respect to which said insured, his legal representatives * * * shall, without written consent of MVAIC * * * prosecute to judgment any action against any person or corporation who may be legally liable therefor.” The respondent contends, therefore, that what was done by petitioner in his County Court action constituted “prosecuting to judgment ” his claim against James White.
CLAIM OF PETITIONER
Petitioner claims that he did not “ prosecute to judgment ” his claim against James White since he never entered a judgment in that action, and that the only judgment in the action, which was in favor of Justine White, is not a judgment of which respondent may take advantage because Justine White has been held not to be legally liable to petitioner. Petitioner claims that the procedure which he followed, that is the commencement and prosecution of an action against Justine and James White, was entirely proper because there was no other way of having a determination as to the liability or nonliability of defendant Justine White, and argues, and we think correctly, that if he had been successful he would have insulated respondent from any responsibility upon the indorsement and, accordingly, it was in no way prejudicial to respondent for petitioner to prosecute his action.
We now come to the controversy between the parties which requires a construction of the words “ prosecute to judgment ”, respondent claiming that since petitioner was entitled to enter judgment and had actually been given permission to do so, he did in fact prosecute to judgment, petitioner claiming that since no judgment was entered, he does not fall within the language of the exclusion.
*718 We have concluded that petitioner is correct and his application should be granted.
In the first place the normal and reasonable meaning of the phrase “ prosecute to judgment ” in the context in which we find it, we feel is to prosecute to and including judgment. The phrase ‘ ‘ prosecute to judgment ’ ’ must mean either prosecute to and including judgment or it must mean prosecute to a point short of or “ this side of ” judgment. The former is the more reasonable meaning. If in a romantic novel the hero, Harold, who has fallen in love with the heroine, is stated by the author to have “ pushed his courtship to a successful conclusion ’’would we then infer from this language that he had pushed his courtship to a point short of a successful conclusion? No, without question we would conclude that he had advanced his wooing to and including a successful conclusion, i.e., to at least an engagement if not a marriage. We submit that this is the ordinary and usual and reasonable meaning of the language in the context of the indorsement and, accordingly, that if one, as petitioner here, fails to enter judgment, he does not come within the interdiction of the exclusion.
Until a judgment is actually entered there was no finality to the action which petitioner took in County Court against James White. (Springer v. Bien, 128 N. Y. 99; Marsh v. Johnston, 123 App. Div. 596; Marx v. Commerce Realty Corp., 199 Misc. 384, affd. 279 App. Div. 562; Concourse Super Service Station v. Price, 33 Misc 2d 503; and, cf., Oklahoma City v. McMaster, 196 U. S. 529.)
Also the intent of the Legislature in enacting article 17-A of the Insurance Law was to afford a remedy to people who, like the petitioner here, had been victims of an uninsured motorist and the statute being remedial, should be, as it applies to the situation we face, liberally construed, once plaintiff has established the fact that he is one of the persons for whose benefit the statute was enacted. (People ex rel. N. Y. City Omnibus Corp. v. Miller, 282 N. Y. 5; People ex rel. Bingham Operating Corp. v. Eyrich, 265 App. Div. 562.)
Finally we cannot see any way in which (since no judgment was entered) the respondent has been prejudiced by any action taken in the County Court by petitioner. As far as respondent is concerned, the County Court action has finally established one thing and one thing only, viz.: that defendant James White is an uninsured motorist within the meaning of article 17-A of the Insurance Law and that MYAIC is obliged to investigate, negotiate and, if James White be legally liable to petitioner, to pay to petitioner the damages which he sustained, pursuant *719 to the provision of the standard indorsement upon petitioner’s automobile liability insurance policy, unless petitioner has violated the conditions specified in exclusion “b” and we think that he has not.
Accordingly we conclude that the motion should be granted, with $10 costs to the petitioner.