J. Irwin Shapiro, J.
This is a motion for an order permanently staying and vacating a demand for arbitration of a claim made under an uninsured motorist’s indorsement to an automobile liability insurance policy.
The petitioner herein, erroneously designated in the title as ‘ ‘ respondent ’ ’, is the insurance company which issued a liability *391 policy to one Thaddeus Ramon Alexandrea. The respondent, erroneously designated in the title as “ claimant ”, was a passenger in the Alexandrea automobile on March 8, 1966, when the said automobile was in collision with another automobile owned and operated by one Robert Joyner. It is conceded that Joyner was uninsured at the time of the accident and it is also conceded that the respondent is an “ insured ’ ’ person under the terms of the uninsured motorist’s provision of Alexandrea’s policy.
It is the contention of the petitioner, however, that the respondent, by commencing an action to recover damages for her personal injuries against Alexandrea, has waived her right to proceed in arbitration against the petitioner to recover damages for Joyner’s negligence under the uninsured motorist provision.
The original motion papers herein were incomplete inasmuch as the petitioner failed to include a copy of the insurance policy pursuant to which the claim has been made. At the request of the court, the petitioner has now furnished a copy of the policy which was in effect at the time the dispute arose and the court shall make this policy and the letter indentifying it part of the record in this proceeding.
A chronology of the facts would appear helpful. The accident occurred on March 8, 1966. The respondent commenced a Civil Court suit against Alexandrea on April 5, 1966. Joyner is named as a defendant in that suit, but the instant papers are silent on the question of whether he was served with process or has appeared in that action. In any event, petitioner makes no claim of waiver based on the commencement of any lawsuit against Joyner. The respondent’s attorney filed an “ FS-25 ” insurance information search request with the Department of Motor Vehicles on April 14,1966. On April 28 he was informed by the said department that Joyner was uninsured on the date of the accident and, on the same day, he gave notice both to the petitioner and to the Motor Vehicle Accident Indemnification Corporation of intention to make claim under the uninsured motorist provision of Alexandrea’s policy. Notice was given to both Amalgamated and the MVAIC since the date of issuance of the Alexandrea policy was not then known to the respondent. Thereafter an attorney designated by Amalgamated interposed an answer in the Civil Court suit on behalf of Alexandrea. This is the same attorney who represents the petitioner in the instant proceeding. He is also an officer of and counsel to Amalgamated.
The respondent’s attorney then wrote a series of letters to the petitioner requesting the issuance date of Alexandrea’s policy, but elicited no response. On July 30 the Department of *392 Motor Vehicles informed the respondent’s attorney that Alexandrea’s policy had been issued on November 10, 1965. Thus it was then known, for the first time, that the uninsured claim was the responsibility of Amalgamated and not that of MVAIC. (Insurance Law, § 167, subd. 2-a, as amd. by L. 1965, ch. 322, § 3.) On August 9, 1966, the said attorney sent a letter to the petitioner informing it of this fact, enclosing proof of claim and requesting a physical examination of the respondent. The letter also stated respondent’s intention of filing a notice of arbitration unless petitioner took steps towards settlement by August 15,1966.
On November 8, 1966 respondent served a demand for arbitration on Amalgamated and a bill of particulars on its attorney in his capacity as attorney for Alexandrea in the Civil Court suit. On November 21, 1966 the petitioner sent a letter in response to the said notice of arbitration, in which it requested respondent to discontinue the Civil Court action. Petitioner now states that she is willing to do this if necessary, but only on condition that such discontinuance be without prejudice as to Alexandrea, so that respondent may commence another action against that individual following arbitration.
This case differs from the usual one wherein a carrier seeks to stay arbitration of an uninsured motorist claim on the ground of waiver in that, here, the claimant has sued not the uninsured motorist, but rather an alleged joint tort-feasor. The cases involving the usual situation are thus not directly in point. Nevertheless an examination might be helpful.
The said cases are divided into two classes, those in which the insurer claimed a waiver on general equitable principles (Matter of Scheck [MVAIC], 40 Misc 2d 575; cf. Matter of MVAIC [Doyle], 41 Misc 2d 871; Matter of Mailman [MVAIC], 36 Misc 2d 825 and cases cited therein) and those in which a waiver was claimed for violation of some specific provision of the insurance contract (Matter of Diamond [MVAIC], 37 Misc 2d 714, affd. 19 A D 2d 590.) The rationale of the former class of cases would appear misguided since in none of them was it recognized that in this type of case there are two separate controversies, the first between the claimant and the uninsured motorist and the second between the claimant and his own insurer which has contracted to indemnify him for damages suffered as the result of the negligence of the uninsured motorist, (cf. Matter of Shumate [MVAIC], 50 Misc 2d 31, 36.)
It is from the insurance contract that the duty or right to arbitration arises. If the claimant commences an action at law on the contract against the insurer, such action would consti *393 tute a waiver under the usual principles. (McCarthy v. MVAIC, 16 A D 2d 35, 44, affd. 12 N Y 2d 922; Matter of Travelers Ind. Co. [Sherwood], 13 A D 2d 507.) But the commencement of a negligence action against the uninsured motorist, standing alone, does not logically constitute a waiver to make claim under the contract, absent some provision therein to the contrary. The insurance carrier owes no duty to the uninsured motorist. It is not bound by any determination reached in the negligence action unless it voluntarily decides to appear therein. The only prejudice it might suffer is the loss of whatever subrogation rights which may have been provided for in the contract of insurance.
This brings us to the second class of cases referred to above. The original standard New York automobile accident indemnification endorsement contained an exclusion that the endorsement did not apply to bodily injury to an insured with respect to which the insured shall, without written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor. (Matter of Diamond [MVAIC], 37 Misc 2d 714, 717, supra.) This exclusion made no sense unless it was read in conjunction with the subrogation or trust agreement also contained in the endorsement. The insurance policy in the instant case also contains a trust agreement which appears to be virtually identical to the trust agreement in the standard New York endorsement. It provides that:
“ trust agreement : In the event of payment to any person under this Part:
“ (a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made ;
“ (b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this Part;
“ (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;
“(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of *394 such recovery for expenses, costs and attorneys ’ fees incurred by it in connection therewith;
“(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision. ’ ’
It is evident that the purpose of the exclusion referred to above was to protect the insurer’s right to recover under the trust agreement by reason of an inadequately tried or ill-prepared case or inadequate settlement. It is also evident that the mere commencement of an action against an uninsured motorist is not only not barred by the insurance policy but, in view of the provision in the trust agreement that the insured shall do whatever is proper to secure the insurer’s subrogation rights, such actions are encouraged by the policy, and it is at least arguable that in some circumstances they may be mandated, (cf. Bishop v. Gilmore, N. Y. L. J., Jan. 4,1967, p. 21, col. 2.)
The exclusion contained in the policy in the instant case is more limited than that in the standard endorsement referred to above. It provided merely that
‘ ‘ exclusions : This policy does not apply under Part IV: íí ^
“ (b) to bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor ”.
There is no express exclusion if the insured should prosecute an action to judgment against the uninsured motorist. The insurer would not be prejudiced by such a judgment, however, since it is provided elsewhere in the policy that “No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.” Accordingly, even if the respondent had commenced an action against Joyner, that in itself would not and could not constitute a waiver.
The question remains whether the commencement of the action against Alexandrea constitutes a waiver. Certainly not under the aforesaid exclusion, even if that exclusion can be construed as applying to Alexandrea. There has been no settlement ivith Alexandrea himself and since the petitioner is the liability *395 insurer for Alexandrea any settlement by it would constitute a waiver of the exclusion. It is clear from an examination of the whole policy that such policy contemplates a situation such as the instant one where the claimant, an additional insured under the uninsured motorist provision of the liability policy issued by the petitioner to Alexandrea, the named insured, would prosecute her rights against the named insured in one forum and also seek recovery from the insurer by reason of the uninsured joint tort-feasor’s negligence in another forum.
Under the limits of liability portion of the insurance contract it is provided that “ (c) Any payment made under this Part to or for any insured shall be applied in reduction of the amount, of damages which he may be entitled to recover from any person insured under Coverage A.” Coverage A is the bodily injury liability part of the insurance policy wherein the insurer agrees to indemnify Alexandrea for such sums which he is legally obligated to pay to the respondent herein. Thus, even if the respondent is successful in proving her ease against Alexandrea in the Civil Court and is also successful in proving before the arbitrators that Joyner was negligent, she cannot recover from Amalgamated more than the total liability coverage afforded Alexandrea for injury to any one person under Coverage A. The petitioner is fully protected.
Petitioner’s contention that it will be burdened by being-forced to defend the same action in two separate forums is unfounded. There are two separate actions here, one involving the negligence of Alexandrea and the other the negligence of Joyner. If it is a burden on the petitioner to defend those two actions in two forums this is not the fault of the respondent. Rather it is caused by the insurance policy issued by the petitioner. The respondent must take the policy the way she finds it. She has no choice. There is no way in which she can arbitrate the question of Alexandrea’s negligence, nor any way in which she can seek redress for Joyner’s negligence against Amalgamated without proceeding in arbitration unless Amalgamated voluntarily waives its rights to insist on arbitration. This it has not done. The burden, if any, rests squarely on the respondent. Under the facts of this case it is highly unlikely that she would not prevail against one of these alleged tortfeasors should she sue them both in the same forum at the same time. By requiring her to split her claims petitioner gets two chances to defeat her. It is possible that it will be able to convince the trier of the facts in the Civil Court action that Joyner was solely negligent and, on the other hand, convince the arbi *396 trator that Alexandrea was solely negligent and thus escape liability altogether.
Moreover, if the petitioner’s contentions regarding a waiver in this case are followed to their logical conclusion, petitioner would force a claimant, such as the respondent herein, to make an initial election as to which of the two possible tort-feasors she intended to proceed against, and if she ultimately were unsuccessful in her suit against that one she would be precluded from claiming against the other. There is nothing in the policy or in the law that gives the insurer the right to require such an election.
The motion is denied. The parties are directed to proceed to arbitration forthwith.