**COCLIN TOBACCO CO., Inc., Creditor, Appellant,**

v.

**Robert J. GRISWOLD, Trustee, et al., Appellees.**

**In the Matter of Louis G. GREENFIELD, Bankrupt.**

**No. 7057.**

United States Court of Appeals
First Circuit.

April 9, 1969.

**1340**

C. Delos, Putz, Jr., New York City, with whom Cadwalader, Wickersham & Taft, New York City, was on brief, for appellant.

Leonard Toboroff, Yonkers, N. Y., with whom Norman S. Isko, Yonkers, N. Y., was on brief, for Carvel Creditors, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from the United States District Court for the District of Puerto Rico sitting in bankruptcy. The issues presented for our determination pertain to the allowance of the claims of the two major unsecured creditors of the bankrupt estate—appellant Coclin Tobacco and appellee Carvel, Inc.

Louis G. Greenfield, the bankrupt, was a partner in the now defunct New York City law firm of Greenfield, Rothstein, Klein & Yarnell. Both claims involved in this appeal arose out of the activities of the bankrupt's law firm. In the interest of clarity the factual background of each claim will be set forth separately.

In March, 1962, Coclin engaged the bankrupt's law firm for the purpose of bringing a private antitrust suit against Brown & Williamson Tobacco Company and British American Tobacco Company. Coclin paid a $15,000 retainer and on April 25, 1962, a complaint was filed in the Southern District of New York. In June of 1963 the bankrupt's law firm failed to appear when Coclin's case was called and the case was dismissed for lack of prosecution.

When Coclin discovered the dismissal it retained a new law firm and sought to restore the case to the docket. When attempts to restore the case failed, a new complaint was filed.[1]

Coclin seeks to recover $15,000 paid under the retainer and $15,000 alleged to have been expended in the attempt to restore the original complaint and in the filing of the new complaint. Coclin is a partnership creditor.[2]

Carvel's claim rests upon a judgment of the New York Supreme Court rendered against the bankrupt for conspiracy to bring false and baseless lawsuits. The memorandum of decision directing judgment for Carvel in the amount of $11,580,488.34 was issued on April 11, 1966.[3] The judgment was entered by the Clerk on July 25, 1966. Carvel is an individual creditor of the bankrupt.

---

1. The case was settled during the time that this appeal was pending.

2. As a partnership creditor Coclin can share in the assets of the bankrupt estate, if at all, only after the payment of individual creditors. § 5(g), Bankruptcy

Act, 11 U.S.C. § 23(g). Collier, Bankruptcy §§ 5.26–5.28 (1968).

3. The Carvel claim was actually comprised of the claims of eight parties all of which were plaintiffs in the New York proceedings against the bankrupt.

On May 16, 1966, the bankrupt filed his petition in bankruptcy in the United States District Court for the District of Puerto Rico. After receiving proofs of claim, the referee allowed Carvel's claims "provisionally" and disallowed Coclin's claims as being contingent and unliquidated.

The district court affirmed the referee, holding that under New York law there must be an abandonment by an attorney in order to entitle the client to recover money paid for legal services. The court found that Coclin had discharged the bankrupt's firm and therefore its claim was disallowed. The court then held that Coclin was not a "person aggrieved" under § 39 of the Bankruptcy Act, and therefore had no standing to seek review of the Carvel claims.

■ Coclin brings this appeal. We reverse for the following reasons. In rejecting Coclin's claim the court relied upon Tenney v. Berger, 93 N.Y. 524 (1883), as holding that there must be an abandonment of a cause by an attorney in order to justify recovery by a client. New York law is not so limited. It is clear that an attorney who is discharged for cause has no right to recover a fee

and may be forced to remit a retainer paid in advance. Rimos v. Rimos, 81 N.Y.S.2d 347 (Sup.Ct.Sp.T.1948); *See also* Ganzales v. Hegner, 20 Misc.2d 232, 192 N.Y.S.2d 212 (Sup.Ct.Sp.T.1959); Schwartz v. Tenenbaum, 7 A.D.2d 866, 182 N.Y.S.2d 51 (1959); In re Montgomery, 272 N.Y. 323, 6 N.E.2d 40, 109 A.L.R. 669 (1936).[4]

■■ The conduct of the bankrupt's law firm clearly constituted grounds for discharge; thus Coclin has a right to recover sums paid the firm for legal services. We take no position on the amount Coclin is entitled to recover[5] nor do we comment on the question of the liquidation of Coclin's claim.[6] We say only that Coclin has a valid claim under New York law.

■■ In light of our disposition of Coclin's claim, Coclin is clearly a "person aggrieved" under § 39 of the Act and is therefore entitled to seek review of Carvel's claim. In addition, Coclin has standing to seek review as the representative of the trustee, the estate, and all other creditors, a position which Coclin occupies by virtue of having sought and obtained such authority from the referee.

4. The cases cited by appellee, Carvel, are strikingly inapposite. For example, Martin v. Camp, 219 N.Y. 170, 114 N.E. 46, L.R.A.1917F, 402 (1916), merely states the rule that an attorney discharged without cause may recover in quantum meruit. In the Matter of Snyder, 190 N.Y. 66, 82 N.E. 742, 14 L.R.A.,N.S., 1101 (1907), involved a clause in a retainer agreement providing that no fee would be paid if the case was settled. The court permitted the attorney who had settled the case to recover, holding such clauses to be against public policy.

5. There are allegations in appellee's brief that $5,000 of the retainer was actually paid to Coclin's Connecticut counsel and that $5,500 was returned to Coclin by one of the bankrupt's law partners. The validity of these allegations and any other issues relating to the amount of Coclin's claim must be determined by the district court on remand.

6. The unliquidated nature of Coclin's claim does not bar its provability under § 63

of the Bankruptcy Act, and ordinarily will not prevent its allowability unless the district court concludes that liquidation will require too much time and expense, § 57(d) Bankruptcy Act, 11 U.S.C. § 93 (d). We leave this matter to the district court with the observation that it is the policy of the Bankruptcy Act to permit liquidation of claims by the district court where feasible. Cases are legion where the courts have liquidated damages arising out of the breach of unusual contracts. *See, e. g.,* Central Trust Co. v. Chicago Auditorium Ass'n, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811 (1916) (contract by transfer company to carry baggage and passengers); In re Hurlbutt, H. & Co., 143 F. 958 (2d Cir. 1906); In re Swift, 112 F. 315 (1st Cir. 1901) (contracts to buy stock on margin). Of course, the claimant's duty to mitigate damages may be considered. In re Dant & Dant, 39 F. Supp. 753 (D.Ky.1941).

In re New England Tire & Rubber Co., 13 F.2d 1004 (D.Mass.1926).

■ Carvel's claim is based upon the commission of an intentional tort by the bankrupt. As a general rule tort claims are not provable in bankruptcy. An exception exists—and it is the only exception for intentional tort claims—where the claim has been reduced to judgment *prior* to the filing of the petition in bankruptcy. Lewis v. Roberts, 267 U.S. 467, 45 S.Ct. 357, 69 L.Ed. 739 (1925); 3A Collier, Bankruptcy ¶ 63.25 [1] (14th ed. 1968).[7]

The petition was filed on May 16, 1966, and Carvel's judgment was not entered by the Clerk until July 25, 1966. Carvel argues that under New York law the entry by the Clerk is merely a ministerial act and that the claim was actually reduced to judgment on April 11, 1966 when the memorandum of decision was issued.

■ Section 63(a) (1) of the Bankruptcy Act requires that the judgment evidence " * * * a fixed liability * * absolutely owing at the time of the filing of the petition * * * whether then payable or not * * *." Questions of the finality of a judgment are governed by the law of the rendering forum, Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946).

Our task is to determine whether under New York law entry of judgment is required in order to satisfy the demands of § 63(a) (1).

Our research has not disclosed, nor has counsel brought to our attention, any New York decisions which have directly considered the issue before us. Appellant relies on Royal Baking Powder Co. v. Hessey, 76 F.2d 645 (4th Cir. 1935), where the court refused to admit to proof a claim based on a New York judgment entered three days after the filing of the petition in bankruptcy. Despite the superficial resemblance of *Royal Baking Powder* to the case at bar, we think that it is clearly distinguishable.[8]

It is true, of course, that in entering a judgment a clerk does not perform a judicial function. However, it is equally clear that New York courts have looked at the criticality of the requirement of entry from the standpoint of the purpose to be served. Entry is necessary for certain purposes. Entry fixes the period for appeal, Vogel v. Edwards, 283 N.Y. 118, 27 N.E.2d 806 (1940), and entry tolls the period for computation of interest on a judgment. See § 5003, N.Y.CPLR; Ariola v. Petro Trucking Corp., 50 Misc. 2d 216, 270 N.Y.S.2d 309 (Sup.Ct.Sp.T. 1966). Most importantly, entry is a prerequisite to enforcement of a judgment through execution. § 5230, N.Y.CPLR; Vogel v. Edwards, *supra*; Langrick v. Rowe, 126 Misc. 256, 212 N.Y.S. 240 (Sup.Ct.Sp.T.1925).

We recognize that some New York cases have held entry not to be necessary for certain purposes. *See, e. g.*, Vogel v. Edwards, *supra*; Langrick v. Rowe, *supra;* Brovender v. Williams, 3 A.D.2d 841, 161 N.Y.S.2d 439, appeal dismissed,

7. The peculiar treatment of tort claims in bankruptcy must be explained by resort to history rather than logic. Tort claims were restricted in provability in English law, probably because bankruptcy was conceived as a means of dealing with commercial debts, and this restrictive approach was carried over to the Bankruptcy Act of 1898.

8. In *Royal Baking Powder, supra,* the trial court sent its proposed findings and opinion to the clerk on March 10, 1931. The judge had not signed the opinion, and

on March 12, 1931, several creditors of the bankrupt obtained a stay restraining the trial court from signing the opinion. On March 13, 1931, the bankruptcy petition was filed and on March 16, 1931, the stay was vacated by the trial judge who subsequently ordered the judgment amended nunc pro tunc so as to be dated March 12, 1931. In short, *Royal Baking* presented, on its facts, a stronger case for respecting the timing of the completion of formalities. In addition, we do not find the New York law relied upon by the court persuasive.

3 N.Y.2d 903, 167 N.Y.S.2d 922, 145 N.E. 2d 868 (1957). However, in each of these cases the result may be explained by the specific issue before the court,[9] and perhaps most significantly, in none of these cases was the court called upon to decide whether an unentered judgment was "absolutely owing".

■ We think it beyond dispute that § 63(a) (1) of the Bankruptcy Act requires a "final" judgment. The basis for requiring finality is two-fold: first, that the amount of the claim be liquidated, and secondly, that the claim have merged in the judgment. Under the present state of the law the liquidation requirement is no longer critical in most cases. However, the prerequisite of merger remains unaltered by amendments to the Bankruptcy Act. To be sure merger is something of an artificial concept but we are not without some guidelines. For example, there can be no doubt that the rendition of a verdict, while liquidating a claim, does not result in merger and therefore is not provable in bankruptcy. See, e. g., In re Ostrom, 185 F. 988 (D.Minn.1911); Matter of Eads, 17 F. 813 (D.Wash.1926). When the requirement of § 63(a) (1) is viewed in that light, we believe it clear that under New York law a judgment is not final until entered. See, Van Arsdale v. King, 155 N.Y. 325, 329, 49 N.E. 866, 867 (1898); Klepper v. Canadian Pacific Ry. Co., 193 Misc. 808, 85 N.Y.S.2d 258 (1948); Matter of DiMaria, 37 Misc.2d 617, 236 N.Y.S.2d 443 (Sup.Ct.1963); Matter of Diamond, 37 Misc.2d 714, 235 N.Y.S.2d 505 (Sup.Ct.1962), aff'd mem., 19 A.D.2d 590, 240 N.Y.S.2d 954 (App. Div.1963). See also Concourse Super Service Station, Inc. v. Price, 33 Misc.2d 503, 226 N.Y.S.2d 651 (Sup.Ct.1962).[10]

■ No reason appears as to why entry did not occur until three months after rendition. "Under New York practice, as we understand it, the prevailing party may prepare the judgment to be entered, if indeed the clerk has not earlier entered it. 9 Carmody-Waite, Cyclopedia of New York Practice, §§ 63.91– 63.113. Even assuming that the delay was due solely to the inaction of the clerk, appellee could have obtained an order from the trial court compelling entry of the judgment. Cf. Greenwich Bank v. Hartford Fire Ins. Co., 250 N.Y. 587, 166 N.E. 334 (1929)."[11]

We recognize that our opinion may appear to display an undue concern with technical distinctions. The appearance is unavoidable since § 63(a) (1) of the Bankruptcy Act requires that we divine the mysteries of New York civil practice. The result reached is also unavoidable. Congress has provided a narrow avenue for the proof of intentional tort claims in bankruptcy. Nothing in the merits of Carvel's claim or in the policies of Bankruptcy Act justifies departure from the Congressional prescription.

Reversed and remanded for proceedings consistent with this opinion.

9. For example, in Vogel v. Edwards, *supra*, the issue before the court was whether emergency legislation concerning deficiency judgments should apply to a judgment rendered before but entered after enactment of the statute.

10. In the Matter of Diamond, *supra*, and In the Matter of DiMaria, *supra*, provide particularly helpful illustrations of the effect of entry on finality. In both cases the defendant sought to escape arbitration on the ground that the claim had been reduced to judgment. However, in both cases the court held the defense invalid because there had been no entry of judgment and therefore the claim had not merged in a judgment.

11. Appellee urges that In re Ganet Realty Corp., 9 F.Supp. 246 (S.D.N.Y.1935) is authority for allowance of its unentered judgment. We do not agree. The claim involved in that case was one for mortgage deficiency and would have been provable without a final judgment—the only question being one of liquidation. As the court in that case pointed out, the order of sale entered before bankruptcy conclusively fixed the amount of the claim.