**ALLSTATE INSURANCE COMPANY, Appellant,**

v.

**H. M. HUNT, Appellee.**

**No. 285.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 28, 1970.

Rehearing Denied Feb. 25, 1970.

Tom Lorance, Lorance & Stamm, Houston, for appellant.

W. Douglas Matthews, Houston, for appellee.

SAM D. JOHNSON, Justice.

Uninsured motorist case.

Allstate Insurance Company issued the instant policy of insurance, containing un-

insured motorist coverage, to H. M. Hunt. On May 28, 1964, Hunt was involved in an automobile collision with Eurice Rose. Hunt allegedly sustained extensive personal injuries when he was struck from the rear in such automobile collision and instituted suit against Rose to recover such injuries.

Pursuant to the policy of insurance issued by Allstate Insurance Company, Hunt was required to furnish, and did furnish, extensive information to Allstate concerning the facts of the accident and his claimed injuries. By letter dated October 5, 1967, Allstate agreed in writing to be bound by the results of the litigation of the tort question in the case of Hunt v. Rose and the amount of damages determined in that lawsuit up to its uninsured policy limits. The pertinent part of the letter provided:

"Please take this as the necessary written consent of Allstate Insurance Company under the policy that the results of the litigation of the tort question, if any, and the amount of damages sustained by Mr. Hunt, if any, (subject to the applicable limits within the policy) shall be binding upon Allstate Insurance Company so that these matters will be taken as established with relation to any claim of Mr. Hunt under his uninsured motorist coverage with Allstate Insurance Company."

Five days after the date of the letter, on October 10, 1967, Hunt amended his pleadings and added Allstate as a co-defendant. Thereafter, on April 3, 1968, Allstate made a motion that it be dismissed from the suit or in the alternative, that it be severed from the action. Allstate's motion for severance requested separate trials under Texas Rules of Civil Procedure, rule 174(b), and in the alternative, Allstate moved that its identity be withheld from the jury. In its motion Allstate stipulated that it had agreed to be bound by the results of the tort action of Hunt v. Rose, as to any liability or damages. The motion was presented to the trial court, which "in ac-

cord with T.R.C.P. 174(b)" ordered separate trials of the case of Hunt v. Rose (which will sometimes hereinafter be referred to as the tort case) and Hunt v. Allstate (which will sometimes hereinafter be referred to as the contract case).

In the ordered separate trial of the tort case, Hunt v. Rose, the defendant Rose was represented by his attorney of record, Travis Hines. When such case was called for trial Allstate's attorney, Tom Lorance, attempted to participate in behalf of Allstate even though such company was not then a party to that suit. The trial court excluded Allstate's attorney and its file from such trial because, in the words of the trial judge, " * * * there was a conflict of interest arising between the Insurance Company lawyer and its contractual insured * * *." The trial court ordered that Allstate's attorney "or any other firm of attorneys who are paid by or compensated in any manner by Allstate Insurance Company for defense of this suit, be disqualified from appearing in or assisting in the defense of this suit either as lead counsel or otherwise." Allstate thereupon stated that it would abide by the court's order but announced that it was forced to withdraw its consent to be bound by the results of the trial of the tort action because it was being denied the right to defend that action or defend itself. It was under such circumstances that the tort action then proceeded to trial by jury. A verdict was returned determining the questions of liability and damages favorably to the plaintiff Hunt. A verdict of $19,106.20 was awarded Hunt by the jury against the defendant Rose and the jury was discharged on December 18, 1968.

Thereafter, on January 9, 1969, Hunt, the appellee here, and Allstate, the appellant here, appeared before the trial court. The court suggested the original policy of insurance and the letter from Allstate Insurance Company be introduced in evidence. On the basis of appellant's stipulations and the other evidence of record, the trial court entered judgment against All-

state in the amount of $10,000, the full amount of the uninsured motorist coverage. The fact that Rose was uninsured was held to be established by the admission into evidence, over objection, of interrogatories propounded by Hunt to Rose in connection with the trial of the tort action. The policy of insurance which was admitted by the court, again over objection, was a blank form without a declaration page attached to show who was insured, the effective dates or the coverage afforded. The trial court nevertheless found that there were no issues of fact to be determined and entered the judgment recited. The defendant Rose did not appeal, and no error is here claimed relative to the trial on the merits or the amount of damages in the tort action, Hunt v. Rose, other than the insurance company's complaint concerning its exclusion from such trial.

Allstate, the appellant, contends that the trial court erred in excluding it and its attorney from participation in the trial of the tort action and in holding it bound by the results of that suit. It is Allstate's position that the trial court, in not allowing it to intervene, deprived it of the right to counsel and the right of a trial by jury. Allstate further contends that the trial court erred in that Rose was not shown to be uninsured and in rendering judgment on the basis of a policy of insurance which was not in evidence.

Uninsured motorist insurance cases are relatively new. In the early 1950's uninsured motorist coverage became available as a method of providing coverage for victims of automobile accidents caused by financially irresponsible motorists. On October 1, 1967, a statute became effective in Texas which provides that all automobile liability insurance policies issued or delivered in this state must include provisions for uninsured motorist coverage unless the insured rejects such coverage. Texas Insurance Code Ann. Art. 5.06–1, V.A.T.S. The statute further provides that when the insurer (company) pays an uninsured motorist

claim, it is subrogated to the rights of the insured for the amount of its payment.

At this writing State Farm Mutual Automobile Insurance Company v. Matlock, Tex.Civ.App., 446 S.W.2d 81, in which application for writ of error has been granted by the Supreme Court, is the only Texas case that deals with the procedure for trial of an uninsured motorist case. Whatever the outcome of the Matlock case, it is of little assistance here. That case involves a direct action against an insurance company in an instance wherein an unidentified tort feasor was the operator of the other vehicle. In the instant case, the uninsured motorist was not only identified but was a party to the action prior to the joinder of the insurance company. Thus the questions presented under the maintenance of direct actions against an insurance company are not before this Court.

■ The basic issue in the instant case is whether an insurance company should be permitted to participate in the defense of an uninsured motorist in a suit brought by its own insured. This is a case of first impression in this state and, as there are no Texas cases which deal with this problem, an examination of decisions in other jurisdictions may be helpful.

In a number of cases presently available, it has been held that the insurance company has a sufficient interest in the action brought by its insured to entitle it to participate in the lawsuit. 95 A.L.R.2d 1330. In State ex rel. State Farm Mutual Auto Ins. Co. v. Craig, 364 S.W.2d 343 (1963), the Missouri Court of Appeals held that the insured had such a direct interest in the subject matter of the action that it was entitled to intervene. In State Farm Mut. Auto Ins. Co. v. Jiles, 115 Ga.App. 193, 154 S.E.2d 286, the court held that the insurer has a direct and immediate interest to protect since it stands to gain or lose by direct effect of the judgment. See also Dominici v. State Farm Mut. Auto Ins. Co., 143 Mont. 406, 390 P.2d 806; Matthews v. All-state Ins. Co., 194 F.Supp. 459 (1961), (D.C.Va.); State Farm Mut. Auto Ins. Co. v. Glover, 113 Ga.App. 815, 149 S.E.2d 852 (1966); Lamb v. Horwick, 48 Ill.App.2d 251, 198 N.E.2d 194; Wert v. Burke, 47 Ill.App.2d 453, 197 N.E.2d 717; Alston v. Amalgamated Mut. Cas. Co., 53 Misc.2d 390, 278 N.Y.S.2d 906 (1967).

On the other hand, a number of cases from other jurisdictions have denied the insurance company the right to participate in the defense of an uninsured motorist in a suit brought by its insured. In Holt v. Bell, 392 P.2d 361 (1964), the Oklahoma Supreme Court held that the auto liability insurer could not be joined as a defendant in an insured's suit against an uninsured motorist. The court stated that it could not countenance a situation where the parties are placed in a position where the interest of the insurer is to defeat the claim of its own insured. In MFA Mut. Ins. Co. v. Bradshaw, 431 S.W.2d 252 (1968), the Supreme Court of Arkansas stated that it was doubtful that the insurer has the right to defend the uninsured motorist. In Kirouac v. Healey, 104 N.H. 157, 181 A.2d 634 (1964), the Supreme Court of New Hampshire held that the insurance company had no standing in its insured's action against an uninsured motorist. In Hernandez v. State Farm Mut. Auto Ins. Co., 192 So.2d 679 (La.App.1967), the Court held that the insurer had no right to provide a defense for the uninsured motorist in the insured's action against such uninsured motorist.

Serious ethical problems arise when an insurance company seeks to participate in the defense of an uninsured motorist. There may be (1) a potential or actual conflict of interest between the insurance company and its own insured and (2) there may be a potential or actual conflict of interest between the insurance company and the uninsured motorist. As the representative of the uninsured motorist the company stands in a fiduciary relationship to him. As the insurer of one suing the uninsured motorist it has, contractually, not only the right but also the duty to represent its in-

sured in defense of any claim that may be asserted against him as a result of the collision in question, and thus stands in a fiduciary relationship to him. Thus to permit the insurance company to defend the uninsured motorist is to permit it to assume a fiduciary relationship to two parties having conflicting interests in the subject matter of the trust. We consider first the conflict of interest between the insurance company and the uninsured motorist.

Under the Texas statute the insurance company is subrogated to the rights of its insured. If the insurance company pays a claim to its insured under the policy, it may attempt to recover that amount from the uninsured driver. In an instance where the company has directly defended the uninsured motorist in a suit instituted by the insured, and then pursues its subrogation claim, it would be seeking a judgment against its former client. This serious ethical problem is not presented under the facts presented in the instant case. A kindred problem does arise under what will hereafter be discussed.

Of immediate concern is the conflict of interest between the company and its own insured. If the insured brings suit against the uninsured motorist and the company is permitted to defend such uninsured motorist, the company would attempt to prove either the negligence of its own insured, or the uninsured motorist's freedom from negligence. Either determination would inure to the benefit of the insurance company. The company interests are therefore opposed to those of its own insured.

Although a counterclaim was not asserted by the uninsured motorist here, the possibility of such a counterclaim's being asserted in other cases cannot be overlooked for such action compounds the conflict of interest problems. If the insurance company undertakes to represent the uninsured motorist who later decides to file a cross-action against the insured, what then is the insurance company's course of action? In defending its own insured against such cross-action the company will attempt to establish that its insured was not negligent or to establish that the uninsured motorist was also negligent. Either of these contentions are opposed to the position the insurance company takes as an intervening party defendant in the original action by the insured against the uninsured motorist. Either contention is opposed to the insurance company's position in representing the uninsured motorist.

Interestingly, in any situation where the insurance company is permitted to undertake a dual representation the most favorable result for the company is for both its insured and the uninsured motorist to be found contributorily negligent. Such a determination would preclude the insurance company's liability. To contend for this most favorable result, however, makes for a conflict of interest between the insurance company and *both* the insured and the uninsured motorist.

The textwriters and the courts caution against accepting any case where a conflict of interest might arise in the future. (Henry Drinker, Legal Ethics, at 104; Sweet, Attorney-Client-Insurance Company Relations, January, 1955, Insurance Law J. 609, 610). When the uninsured motorist first seeks counsel, the posture of the parties is not clearly established, yet in every instance the possibility exists that he will assert a claim or a counter-claim against the insured. Thus, if an insurance company undertakes to defend or assist in the defense of an uninsured motorist a potential conflict of interest is always present.

As has been heretofore indicated some, though by no means all, jurisdictions permit intervention or participation by the insurance company. See Widiss, A Guide to Uninsured Motorist Coverage, Sec. 7.15, p. 268. In some of these states intervention is held to be a matter of right and in others it depends on the permission of the court. We are of the opinion, however, that the conflict of interest that is in every case potentially present compels a determination that the insurance company must re-

frain from representing the uninsured motorist or from intervening in an uninsured motorist case such as the one here presented. Only such determination will eliminate the possibility of the conflict of interest arising.

 There are other considerations which support this determination. Aside from the conflict of interest problem it would scarcely be countenanced if the insurance company actually undertook to represent both the uninsured motorist and its own insured. And while there may be some question concerning the insurance company's position in regard to the uninsured motorist, there is little controversy relative to its obligation to its own insured. The primary obligation of the company issuing automobile liability coverage is to defend the insured against suits alleging damages within the terms of the policy, even though such suit may be groundless, false or fraudulent. See e. g., Cook v. Ohio Cas. Ins. Co., Tex.Civ.App., 418 S. W.2d 712, 714; no writ hist.; International Service Ins. Co. v. Boll, Tex.Civ.App., 392 S.W.2d 158, 160, ref., n.r.e.; West Texas Stone Co. v. Employers Casualty Co., Tex.Civ.App., 178 S.W.2d 168, ref., w.o.m. The uninsured motorist provision on the other hand relates to a considerably more restricted liability under an ancillary provision in the policy. We do not believe that an insurance company should be permitted to voluntarily place itself in a position under an ancillary policy provision where it cannot ethically fulfill its basic contractual obligation to defend its insured.

For the reasons which have been expressed we are of the opinion that the trial court correctly excluded Allstate's attorney and its files from the trial of the suit between the uninsured motorist and Allstate's insured.

 We are also of the opinion that the fact that Rose was uninsured was sufficiently established at trial. The trial court had before it the deposition testimony of the defendant Rose where he stated that he was in fact uninsured. Allstate's contention that the record does not show that Rose was uninsured is therefore overruled.

 We further overrule Allstate's contention that the terms of the policy being sued upon are not in the record. Allstate admitted and stipulated in its motion seeking separate trials that there was a policy of uninsured motorist coverage between Hunt and Allstate and that it was the standard Texas policy. When the second action (suit on the contract) came before the court a copy of the policy between Hunt and Allstate was offered in evidence. The trial court could, as it did, take judicial notice that all Texas uninsured motorist coverage is for a minimum of $10,000 for bodily injuries to any one insured.

Allstate's remaining points of error are overruled and the judgment of the trial court is affirmed.