Greg FETCH, Personal Representative
of the Estate of Waylin Fetch,
Plaintiff and Appellee,

v.

Kelly M. QUAM, Defendant,

v.

AMERICAN HARDWARE MUTUAL
INSURANCE COMPANY, Intervenor
and Appellant.

Civ. No. 940257.

Supreme Court of North Dakota.

April 13, 1995.

Carpenter Offices, Bismarck, for plaintiff
and appellee; argued by Deborah J. Carpenter. Appearance by Kathleen J. Hall.

Pearce & Durick, Bismarck, for intervenor
and appellant; argued by David E. Reich.

MESCHKE, Justice.

American Hardware Mutual Insurance
Company (American) appealed from a judgment for Waylin S. Fetch for damages from
injuries in a collision with an uninsured motor vehicle, an order denying its motion to
reconsider and to reduce costs, and interlocutory orders holding the uninsured driver in
default and limiting American's participation
in the action. We reverse and remand for a
new trial.

In May 1988, Fetch was injured in a collision between his motorcycle and a pickup
driven by Kelly M. Quam. Fetch was eastbound on East Main Street in Mandan.
Quam had been westbound on East Main
Street, but abruptly turned left to head south
at an intersection in front of Fetch. Fetch
sued Quam on November 21, 1990. Quam
did not respond to the complaint or otherwise
appear. Quam was uninsured.

Fetch had uninsured motorist coverage
through American's insurance policy with
Fetch's father, and American moved to intervene in Fetch's action against Quam on December 20, 1990. On January 7, 1991, Fetch
moved for a default judgment against Quam.
On August 28, 1991, the trial court held
Quam in default. On September 11, 1991,
the trial court ruled on the scope of American's intervention:

> In this state contributory negligence is an
> affirmative defense. If not raised *by answer*, it is waived. See Rule 8(c),
> N.D.R.Civ.P. Since the defendant is in
> default, questions of contributory negligence are not in issue.
>
> \*    \*    \*    \*    \*    \*
>
> I will allow, therefore, the insurance company to question, *in a hearing convened
> under Rule 55(a)(2), N.D.R.Civ.P.*, wheth-

er there was negligence on the part of the defendant in default and the extent and the amount of damages sustained by the plaintiff as a proximate result of the accident. Contributory negligence will not be an issue.

After the restricted default hearing, the trial court found that Fetch had established special damages for medical costs of $10,697.44 and damages of $125,000 for Fetch's "injuries and pain and suffering." Judgment was entered for Fetch against American for $135,-697.44 in damages, plus costs. American appealed.

■ The trial court allowed American to intervene in the action to contest whether there was fault by Quam, but would not allow American to show comparative fault by Fetch. American contends that the trial court erred in so limiting the extent of its participation. We agree.

At the time of the accident, NDCC 26.1–40–14(1) directed:

No motor vehicle liability insurance policy ... may be delivered ... in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided ... for bodily injury or death for the protection of insureds who are legally entitled to recover damages from owners or operators of uninsured motor vehicles....

American's insurance policy to Fetch promised: "We will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury.'"

An insurer with uninsured motorist coverage will often want to intervene in a suit by the insured against an uninsured motorist in order to defend against the insured's claim, thereby reducing or refuting its liability to its insured. There are differing views among the various jurisdictions on whether or not intervention should be permitted, and, if permitted, the extent of the intervention allowed. Francis M. Dougherty, Annotation, *Right of Insurer Issuing "Uninsured Motorist" Coverage to Intervene in Action by Insured Against Uninsured Motorist*, 35 A.L.R.4th 757 (1985). We have not ruled on the question before this case.

"The overwhelming majority of courts have allowed an uninsured motorist insurance carrier to intervene in a tort action between its insured and an uninsured tortfeasor." *Lima v. Chambers*, 657 P.2d 279, 281 (Utah 1982). Generally, courts favor intervention and joinder of all parties in one action as a convenient method of settling all related controversies on the same subject. *Keel v. MFA Ins. Co.*, 553 P.2d 153 (Okla. 1976). *Heisner v. Jones*, 184 Neb. 602, 169 N.W.2d 606, 611–12 (1969), describes the reasons for allowing unrestricted intervention:

We therefore hold that an uninsured motorist's carrier may intervene in an action between its insured and the uninsured tort-feasor in order to protect itself on the issues of liability and damages arising under the uninsured motorist's provisions of its insurance policy.... The carrier would not be bound unless given full notice and adequate opportunity to intervene and defend when the insured litigates the issues of liability and damages with the uninsured motorist tort-feasor. To give the uninsured motorist's carrier the right to intervene is to give assurance that it may litigate the issues and at the same time avoid the multiplicity of suits and the harassment of the insured by the necessity to litigate his rights twice.

Several other reasons have been given by other courts and commentators. "[T]he cumulative effect of the spirit of the Indiana Trial Rules, the interests of justice, the avoidance of multiple litigation and the conservation of judicial time compels our conclusion to allow intervention by the insurer." *Vernon Fire & Cas. Ins. Co. v. Matney*, 170 Ind. App. 45, 351 N.E.2d 60, 64 (1976). "[I]ntervention logically leads to the prevention of conflicting results in the outcome of two actions to decide the identical questions." *Id.* 351 N.E.2d at 64. To effectively contest the amount an insured is "legally entitled" to recover from an uninsured motorist, an intervening insurer must be able to defend in the same ways that a defendant could have; otherwise, the intervenor is merely being allowed to "sit in court and watch plaintiff take a default from the vantage point of counsel

table instead of from the back benches." *Beard v. Jackson,* 502 S.W.2d 416, 419 (Mo. App.1973). The reasons for unrestricted intervention are persuasive.

The purpose of mandatory uninsured-motorist insurance is "protection equal to that which would be afforded if the offending motorist carried liability insurance." 8C John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 5086, p. 307 (1981). "[T]he insurer stands in the shoes of the uninsured motorist, and must pay if he would be required to pay." *Id.* at 309–10. With uninsured motorist coverage, a "victim ... collects under her own policy the compensation that the liability carrier would have paid if the uninsured motorist had been insured." *McIntosh v. State Farm Mut. Auto. Ins. Co.,* 488 N.W.2d 476, 479 (Minn.1992). In effect, the insurer stands behind the uninsured motorist for the benefit of its insured.

For some courts, the conflict of interest implicit in an insurer contesting its own insured's claim prevents the insurer from complete intervention in a suit by its insured against an uninsured motorist. As the court said in *Allstate Ins. Co. v. Hunt,* 450 S.W.2d 668, 671 (Tex.Civ.App.1970): "Serious ethical problems arise when an insurance company seeks to participate in the defense of an uninsured motorist." The court explained:

> Interestingly, in any situation where the insurance company is permitted to undertake a dual representation the most favorable result for the company is for both its insured and the uninsured motorist to be found contributorily negligent. Such a determination would preclude the insurance company's liability. To contend for this most favorable result, however, makes for a conflict of interest between the insurance company and *both* the insured and the uninsured motorist.

*Id.* at 672. The court did not "believe that an insurance company should be permitted to voluntarily place itself in a position under an ancillary policy provision where it cannot ethically fulfill its basic contractual obligation to defend its insured." *Id.* at 673. However, contributory negligence is no longer a complete bar in North Dakota. *See Wentz v. Deseth,* 221 N.W.2d 101 (N.D.1974). Today, comparative negligence affects the amount of recovery more than liability. *See* NDCC 32–03.2–02. Therefore, we are skeptical of reasoning that prohibits intervention.

Our procedural rules authorize an intervention of right to protect an interest in the subject of an action. NDRCivP 24(a) directs:

> Upon timely application anyone must be permitted to intervene in an action if: ... the applicant claims an interest relating to the property or transaction that is the subject of the action and ... disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

No question has been raised in this case about the timeliness of American's request to intervene of right.

Because American was an intervenor of right under NDRCivP 24(a), rather than a permissive intervenor under NDRCivP 24(b), it is doubtful the trial court could impose any substantive restrictions upon American's intervention. Commentators on FRCivP 24, the forerunner of our rule, have distinguished interventions of right from permissive interventions. Professors Moore and Kennedy write: "There seems to be no doubt that an intervenor with a right to intervene" may question the sufficiency of a complaint, contest a claimant's right to recover a certain amount of damages, or press a claim of its own to reduce the value of other claims. 3B James W. Moore & John E. Kennedy, *Moore's Federal Practice* ¶ 24.16[4] (2d ed. 1993). "It would be meaningless to give the intervenor an absolute right to intervene in order to protect its interest, if once in the proceeding it were barred from raising questions necessary for that protection." *Id.* Moore and Kennedy contrast an intervention of right with a permissive intervention: "When raised by a permissive intervenor, such questions may unduly burden the proceedings. The remedy, however, is to deny intervention, or to allow intervention only for limited purposes." *Id.* Professors Wright, Miller and Kane describe similar distinctions between interventions of right and permissive interventions. 7C Charles A. Wright,

Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1922 (1986). While acknowledging that the Advisory Committee Note to FRCivP 24 says that "[a]n intervention of right ... may be subject to appropriate conditions or restrictions," Wright, Miller, and Kane declare that "Rule 24(a) does not authorize the imposition of conditions." *Id.* at 505. They concede that if the conditions imposed "are reasonable and are of a housekeeping nature," the view expressed in the Note is "likely to prevail," *id.* at 506–07, but question the validity of substantive conditions:

It seems very doubtful, however, that the court has the right to make significant inroads on the standing of an intervenor of right; in particular, it should not be allowed to limit him in the assertion of counterclaims or other new claims.

*Id.* at 507. We need not decide here whether a trial court can impose any substantive conditions on an intervenor of right. It is enough to decide this case that we determine, as we do, that the trial court abused its discretion in imposing the condition that American not inquire into Fetch's comparative fault.

Because American's "contractual liability to its insured will be determined by the amount of damages awarded to its insured in the tort action," American's interest justifies its intervention. *Lima v. Chambers*, 657 P.2d at 282. Because American's contractual duty to Fetch stems from the statutory requirement of NDCC 26.1–40–14(1) that insurers "assume financial responsibility for judgments obtained by their insureds against uninsured motorist tortfeasors," *Lima v. Chambers*, 657 P.2d at 284, the "disposition of the action may as a practical matter impair or impede [American's] ability to protect that interest," within the meaning of NDRCivP 24(a). Since the comparative fault of a claimant would affect the legal liability of the uninsured motorist, there seems no good reason why American cannot present that claim as a defense. Because the interests of Fetch and American clash in Fetch's action against Quam, and Quam defaulted, American's interest clearly would not be "adequately represented by existing parties." Under NDRCivP 24(a), this reason alone justifies unrestricted intervention by American.

Of course, conflicts of interest will exist when an insurer intervenes in an action between its insured and an uninsured motorist to press all the defenses that the uninsured motorist could present. However, this is like the "common situation where the carrier has coverage on two insureds involved in the same accident." *Heisner v. Jones*, 169 N.W.2d at 612. By equating this situation with a contest between two insureds of the same insurer, the trial court can defuse these conflicts by requiring the insurer to furnish independent counsel to represent the insured on the insurer's claims and defenses, or by requiring reimbursement of the insured's reasonable attorney fees for those services.

■ This situation is comparable to *Hart Const. Co. v. American Family Mut. Ins. Co.*, 514 N.W.2d 384 (N.D.1994). There, an insured subcontractor (Hart) sued the seller/contractor (Menard, Inc.) and the owner (Ballantyne Brothers) of a pole barn for the additional cost of rebuilding the pole barn after it was blown down in a storm. Menard crossclaimed against Ballantynes and Ballantynes counterclaimed against Hart for indemnity from Menard's crossclaim. Hart's insurance policy provided that the insurer *"shall have the right and duty to defend any suit against the insured seeking damages* on account of such bodily injury or property damage." *Id.* at 389. We said that "'damages' in the insuring clause of Hart's CGL policy is broad enough to include a suit for indemnification." *Id.* at 390. Overruling the trial court, we held that the Ballantynes' counterclaim for indemnity, that would have offset the insured's claim for damages, was a "suit" requiring Hart's insurer to defend. Here, the insuring agreement in the liability coverage of Fetch's insurance policy agrees:

We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident.... We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur.

As in *Hart,* we believe a defense of comparative negligence that would defeat the insured's claim for damages requires the insurer to pay the insured's costs caused by the offsetting defense. Here, if successful, American's claim that Fetch was at fault could decrease or defeat Fetch's claim for damages. American's duty to furnish independent counsel to Fetch or to reimburse Fetch's reasonable attorney fees, as in *Hart,* arises from its duty to defend its insured against a claim that would reduce or defeat its insured's claim. This also comports with what an insured anticipates from insurance for an accident. *See State Farm Fire & Cas. Co. v. Sigman,* 508 N.W.2d 323, 326 (N.D. 1993), where we said that an "insured pays premiums to receive protection, not a lawsuit from its insurer."

In our view, any problem posed by the clashing interests of the parties is solvable and outweighed by factors favoring the allowance of unrestricted intervention by the insurer to present all the claims and defenses that the uninsured motorist could have raised. Unrestricted intervention avoids a multiplicity of lawsuits by settling all of them in a single proceeding, thereby conserving the time and resources of both the litigants and the judicial system. Unrestricted intervention will prevent differing outcomes of separate actions that decide the same questions, and will assure that the amount of damages will not be larger than if the uninsured motorist had been insured and defended—the intended effect of the coverage. Fairness requires that an insurer who must pay a judgment obtained by its insured against an uninsured motorist "should have the right to dispute the questions which make it liable on its contract." *State v. Craig,* 364 S.W.2d 343, 347 (Mo.App.1963). We believe the reasons for unrestricted intervention far outweigh any perceived problems.

We conclude that, by refusing to allow inquiry into Fetch's comparative fault, the trial court abused its discretion in limiting the scope of American's intervention in Fetch's action against Quam. Generally, damages and liability for tort are intertwined. *Jim's Hot Shot Serv. v. Continental West. Ins. Co.,* 353 N.W.2d 279 (N.D.1984);

*Schumacher v. Schumacher,* 469 N.W.2d 793, 800 (N.D.1991). Therefore, we remand for a new trial on both liability and damages. Because the questions on appeal about damages are unlikely to reoccur at a new trial, we do not address the separate damage questions brought here.

We reverse the judgment and remand for a new trial.

VANDE WALLE, C.J., and SANDSTROM and NEUMANN, JJ., concur.

LEVINE, J., concurs in the result.