**Allen TAIT, Plaintiff,**

v.

**ROYAL INSURANCE COMPANY, Defendant.**

**Civ. No. 95–0140–B.**

United States District Court, D. Maine.

Jan. 29, 1996.

David M. Lipman, Lipman & Katz, Augusta, Maine, for Plaintiff.

Frederick J. Badger, Jr., Richardson, Whitman, Large & Badger, Bangor, Maine, for Defendant.

## ORDER AND MEMORANDUM
## OF DECISION

BRODY, District Judge.

Plaintiff, Allen Tait, brings this three Count action against Defendant Royal Insurance Company, alleging breach of the duty of

good faith and fair dealing and tortious interference with a prospective contractual relationship. Plaintiff also seeks punitive damages. Defendant moves to dismiss Count I of Plaintiff's Complaint, and for summary judgment on Counts II and III. The Parties have provided information supplemental to the pleadings, and, therefore, the Court will treat Defendant's Motion to Dismiss Count I as a Motion for Summary Judgment. *See* Fed.R.Civ.P. 12(b)(6).

### Background

24–A M.R.S.A. § 2902 requires all policies providing automobile liability insurance to provide coverage for injuries caused by uninsured or underinsured motorists. Section 2902 classifies a motorist as underinsured when the motorist causes injuries that exceed the extent of his or her liability insurance. The statute requires insurers to provide uninsured motorist coverage in the amount of $10,000 for damage to property, $20,000 for injury or death of any one person, and $40,000 for injury or death in the aggregate. 24–A M.R.S.A. § 2902(2) (referencing 29–A M.R.S.A. § 1605).

In December of 1994, Plaintiff and other passengers riding with him suffered severe injuries when Jason Purington's vehicle crossed the center line and collided with the vehicle in which Plaintiff was riding. Jason's automobile belonged to his father, Robert Purington, whose insurance covered up to $50,000 per person or $100,000 aggregate. Plaintiff's injuries alone exceeded $50,000 making Jason Purington an underinsured motorist. *See* 24–A M.R.S.A. § 2902.

Plaintiff filed suit against Jason and Robert Purington ("the Puringtons"), Defendant, and Maine Bonding, Plaintiff's own insurance carrier.[1] Subsequent to filing, Plaintiff reached a proposed settlement with all of the parties involved except Defendant. Under the agreement, the parties would release the Puringtons from all further liability in exchange for a share of the Puringtons' insurance proceeds.[2] Finalization of the settle-

ment would then free Plaintiff to pursue recovery of the underinsured portion from Defendant.

The policy on the Coutts Brothers vehicle required Defendant's consent to any settlement with an uninsured motorist as a condition to the payment of uninsured motorist benefits. Pursuant to that policy, Plaintiff sought Defendant's consent to the proposed settlement with the Puringtons. Defendant refused, and instead entered into an agreement with the Puringtons to defend them against Plaintiff's claim and indemnify them against any judgment in exchange for their agreement not to enter into settlement without Defendant's consent.

Plaintiff responded with this suit, alleging breach of the duty of good faith and fair dealing (Count I) and tortious interference with a contractual relationship (Count II). Plaintiff also seeks punitive damages (Count III). Whether the duty of good faith and fair dealing extends to uninsured motorist claims prior to the establishment of liability of the uninsured motorist presents a question of first impression in Maine. This Court concludes that the duty does extend to the uninsured motorist context, but grants Summary Judgment for Defendant on Count I. The Court also grants Summary Judgment for Defendant on Counts II and III.

### Discussion

#### A. Standard

■■■ Courts properly grant summary judgment when the moving party demonstrates the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party may rely on deposition testimony, answers to interrogatories, admissions on file and affidavits to meet its burden. *Id.* In addition the moving party may satisfy its burden by demonstrating an absence of evidence to support an essential element of a claim for which the nonmoving party bears the burden of proof. *Celotex Corp. v. Ca-*

---

1. Defendant provided insurance coverage to the Coutts Brothers of $1,000,000 in uninsured motorist benefits. The Coutts Brothers owned the vehicle in which Plaintiff was riding at the time of the accident.

2. Specifically, the settlement proposal would have divided $100,000, the extent of the Puringtons' coverage, among all parties injured. Plaintiff would have received $16,666.66.

*trett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the nonmoving party need only present evidence from which a jury might return a verdict in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). The nonmoving party, however, may not rest on mere allegations or denials, but must employ affidavits, admissions, deposition testimony and answers to interrogatories to set forth specific facts establishing a genuine issue for trial. Fed.R.Civ.P. 56(e).

### B. Duty of Good Faith and Fair Dealing

In Count I, Plaintiff alleges that Defendant breached the duty of good faith and fair dealing implied in every insurance contract, both by refusing to consent to the proposed settlement and by agreeing to defend the Puringtons. Defendant contends that no such duty arises until the insured establishes that the uninsured motorist bears liability for the insured's injuries.

■ In Maine, an implied covenant of good faith and fair dealing exists in every insurance contract. *Marquis v. Farm Family Mutual Insurance Co.,* 628 A.2d 644, 648 (Me.1993). The duty arises at the time the parties enter into the insurance contract, and does not depend on who might be involved in any subsequent litigation. *Id.* The Supreme Judicial Court has not yet examined the duty of good faith and fair dealing in the context of uninsured motorist insurance contracts. In construing the uninsured motorist statute, however, the Law Court has expounded a broad policy favoring compensation to the responsible but innocent motorist injured by an uninsured driver. *Wescott v. Allstate Insurance Co.,* 397 A.2d 156, 166–67 (Me.1979). In light of that policy, courts applying Maine law narrowly construe uninsured motorist contracts against insurers' efforts to limit the mandatory coverage, and liberally construe such contracts in favor of compensation to the insured. *Id.* at 167. This Court is satisfied that the Law Court would view insurers' efforts to limit the statutorily mandated coverage through unfair conduct or bad faith with equal skepticism.

■ In a first party insurance contract, the duty of good faith and fair dealing rests on the fiduciary relationship between the insurer and insured which derives from the insurer's obligation to defend the insured and attendant control over any litigation. *Linscott v. State Farm Mutual Automobile Insurance Co.,* 368 A.2d 1161, 1163 (Me.1977); *Craft v. Economy Fire & Casualty Co.,* 572 F.2d 565, 569 (7th Cir.1978). Defendant contends that an insurer and insured in an uninsured motorist context share an adversarial, not fiduciary, relationship at least until the insured establishes the liability of the uninsured motorist. That adversarial relationship, Defendant argues, precludes any duty of good faith and fair dealing prior to the establishment of liability. The Court disagrees.

■ The duty of good faith and fair dealing is also based on the reasonable expectations of the insured and the unequal bargaining positions of the insurer and insured. *Craft,* 572 F.2d at 569. A dispute over the liability of the uninsured motorist will likely place the insurer at odds with the insured. *See id.* at 568; *Hendren v. Allstate Insurance Co.,* 100 N.M. 506, 672 P.2d 1137, 1141 (Ct.App.1983). The insurer may seek to protect its interest in the validity of the claim by asserting defenses on behalf of the uninsured motorist, including comparative negligence. *Craft,* 572 F.2d at 568; *Hendren,* 672 P.2d at 1141; *State Farm Mutual Automobile Insurance Co. v. Shrader,* 882 P.2d 813, 826 (Wyo.1994). The insured, however, has paid premiums both for the insurance coverage and the reasonable expectation that the insurance company will deal fairly and in good faith. *Craft,* 572 F.2d at 568–69.

The duty of good faith and fair dealing is not inconsistent with the insurer's potentially adverse interest. To the extent the insurer and insured occupy an adversarial relationship, they do so only on the limited issue of liability. *Craft,* 572 F.2d at 568; *Shrader,* 882 P.2d at 826. In this context, the duty of good faith and fair dealing simultaneously recognizes the insurer's interest in ensuring that the insured establishes legal entitlement to benefits, and protects the insured's reasonable expectation that the insurance com-

pany will not engage in unscrupulous conduct toward the insured. *See Hendren*, 672 P.2d at 1141. The duty of good faith and fair dealing thus prevents an insurer from using the limited adversarial relationship as an excuse to overreach its policy holder, and thereby blunts some of the potentially severe ramifications to the insured that arise out of uninsured motorist coverage. *See id.* (insurer can protect its interest but cannot overreach insured).

An increasing number of jurisdictions have extended the duty of good faith and fair dealing to the uninsured motorist situation.[3] As the Supreme Court of Wyoming recently pointed out,

> [u]nlike any other type of first party insurance, the uninsured motorist coverage is the subject of a legislative mandate in forty-nine states. The various state insurance laws—that establish the requirements for uninsured motorist insurance—are clearly intended to benefit all insureds, and the attainment of this goal certainly encompasses requiring the fair and equitable settlement of uninsured motorist claims. Unreasonable conduct by an insurer frustrates the public policy embodied in the applicable state insurance legislation, as well as breaching the implied-in-law duty to deal fairly and in good faith. Thus, the standard by which the conduct of insurers is judged arguably should be higher for uninsured motorist claims than it is for first party insurance coverages that are not mandated by statute.

*Shrader*, 882 P.2d at 826.

The Court concludes that in light of both the policy underlying Maine's uninsured motorist statute and the policies that justify the duty of good faith and fair dealing, Maine would extend the insurer's duty of good faith and fair dealing to the uninsured motorist context, even prior to the establishment of liability of the uninsured motorist. *See Wescott*, 397 A.2d at 166–67 (policy underlying Maine uninsured motorist statute).

### C. Plaintiff's Allegations

Having determined that Maine would recognize a cause of action for breach of the duty of good faith and fair dealing by an insured against its uninsured motorist insurer, the Court now addresses Defendant's Motion for Summary Judgment. The Court concludes that Defendant did not breach its duty, and, accordingly, grants Summary Judgment for Defendant on Count I.

■ In an uninsured motorist context, an insurer breaches the duty of good faith and fair dealing by taking an action adverse to the insured without a reasonable basis for that action. *See, e.g., Hillman v. Nationwide Mutual Fire Insurance Co.*, 855 P.2d 1321, 1324 (Alaska 1993) (cause of action where claim denied without reasonable basis); *Morgan v. American Family Mutual Insurance Co.*, 534 N.W.2d 92, 96 (Iowa 1995) (same); *Palmer v. Farmers Insurance Exchange*, 261 Mont. 91, 861 P.2d 895, 901 (1993) (no cause of action where insurer had reasonable basis for contesting the claim); *Bibeault*, 417 A.2d at 319 ("fairly debatable" claim precludes liability for breach); *Arnold*, 725 S.W.2d at 167 (cause of action where claim delayed or denied without reasonable basis); *Shrader*, 882 P.2d at 825 (cause of action where claim denied without reasonable basis). Thus, in this case, whether Defendant breached its duty of good faith and fair dealing will depend on whether Defendant establishes a reasonable basis for its actions.

### 1. Refusal to Consent to Settlement

■ The policy between Plaintiff and Defendant provided that Plaintiff must notify Defendant of any proposed settlement with an uninsured motorist and must not enter

---

**3.** *See, e.g., Craft*, 572 F.2d at 570 (applying Indiana law); *Richardson v. Employers Liability Assurance Corp.*, 25 Cal.App.3d 232, 102 Cal. Rptr. 547, 552 (1972), *overruled on other grounds*, *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1042 n. 10 (1973); *Stewart v. Walker*, 597 N.E.2d 368, 375 (Ind.Ct.App.1992); *Hendren v. Allstate Insurance Co.*, 672 P.2d 1137, 1141 (N.M.Ct.App.1983); *Shrader*, 882 P.2d at 826; *Bibeault v. Hanover Insurance Co.*, 417 A.2d 313, 318 (R.I.1980); *MFA Mutual Insurance Co. v. Flint*, 574 S.W.2d 718, 721 (Tenn.1978); *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165, 167 (Tex.1987), *modified on other grounds*, *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 829 (Tex.1990).

into any such settlement without Defendant's consent. Consent to Settlement clauses in uninsured motorist policies serve to protect the insurer's potential right to subrogation against anyone who may bear liability for the injury to the insured.[4] *Wescott*, 397 A.2d at 168; *MacInnis v. Aetna Life & Casualty Co.*, 403 Mass. 220, 526 N.E.2d 1255, 1256–57 (1988). Plaintiff contends that because the Puringtons have no substantial assets, Defendant has no viable subrogation rights, and, therefore, that Defendant unreasonably withheld its consent to the proposed settlement. *See MacInnis*, 526 N.E.2d at 1259–1260 (no potential subrogation against uninsured motorist with no substantial assets). Plaintiff concludes that as a matter of law Defendant breached its duty of good faith and fair dealing. *See id.* (in absence of substantial assets, insurer must give its consent to settlement). The Court disagrees.

In addition to a subrogation interest, the insurer facing a potential uninsured motorist claim has an interest in the liability of the uninsured motorist, upon which the insurer's liability to the insured rests. *See Craft*, 572 F.2d at 568; *Hendren*, 672 P.2d at 1141; *Shrader*, 882 P.2d at 827. Consent to settlement clauses provide one avenue through which the insurer can protect its interest in compensating only valid claims. *See Allstate Insurance Co. v. Beavers*, 611 So.2d 348, 351–52 (Ala.1992) (consent to settlement clauses protect against possible collusion between insured and tortfeasor); *Waters v. United States Fidelity & Guaranty Co.*, 328 Md. 700, 616 A.2d 884, 892 (1992) (consent to settlement protects insurer's right to defend uninsured motorist) (quoting *Nationwide Mutual Insurance Co. v. Webb*, 291 Md. 721, 436 A.2d 465, 476 (1981)); *Silvers v. Horace Mann Insurance Co.*, 324 N.C. 289, 378 S.E.2d 21, 27 (1989) (consent to settlement clause may prevent prejudice to insurer). In

the absence of a liability dispute, the insurer preserves only subrogation rights through the consent to settlement clause. Should the insurer have a reasonable doubt as to the uninsured motorist's liability, however, the consent to settlement clause preserves the insurer's opportunities to assert defenses on behalf of the uninsured motorist, or ensure that the settlement is not collusive. *Waters*, 616 A.2d at 892; *Beavers*, 611 So.2d at 351–52.

■ In order to defeat a claim of bad faith arising out of refusal to consent to settle Defendant must establish a reasonable basis for its refusal to consent. *See Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584, 591 (1971) (clause carries implied promise that consent will not be arbitrarily or unreasonably withheld). Defendant asserts that strong doubts as to the Puringtons' liability led it to withhold its consent to the proposed settlement. Specifically, Defendant contends that Jason Purington was sober and traveling within the speed limit when he encountered a patch of ice that caused him to lose control. In their affidavits, both Jason and Robert Purington strenuously deny that the accident resulted from negligence on their part. While Plaintiff alleges negligence in his complaint, he has failed to offer any affidavit, answer to interrogatory or deposition testimony disputing Defendant's asserted reasonable basis for refusing to consent to the proposed settlement. The Court concludes that Defendant has established a reasonable basis for withholding consent to Plaintiffs' proposed settlement with the Puringtons.[5]

### 2. Defense of the Puringtons

Plaintiff also asserts, without significant argument, that Defendant breached its duty of good faith and fair dealing by agreeing to

---

4. In *Wescott*, the Supreme Judicial Court of Maine invalidated the application of a consent to settlement clause against an insured who settled with a third party without securing consent, because the statute expressly granted subrogation rights against the uninsured motorist, and not against other parties. 397 A.2d at 168–69. The court specifically did not address the validity or application of a consent to settlement clause where an insured settles with the uninsured mo-

torist without securing prior consent. *Id.* at 167, n. 8. *See also Bazinet v. Concord General Mutual Insurance Co.*, 513 A.2d 279, 282 (Me.1986).

5. The Court notes that Defendant need establish only that the claim was fairly debatable, and need not prevail in a dispute regarding the validity of that claim in order to defeat Plaintiff's allegation of breach. *Bibeault*, 417 A.2d at 319; *Palmer*, 861 P.2d at 902.

defend the Puringtons against Plaintiff's underlying claim. The Court again disagrees.

■ As indicated, uninsured motorist insurance creates an uneasy tension between the insurer and insured, which stems from the potential conflict between the insurer's obligation to its policyholder and its interest in the validity of the claim. *Hendren,* 672 P.2d at 1141. The overwhelming majority of jurisdictions, however, allow an insurer to participate on behalf of the tortfeasor in a tort action by the insured. *Fetch v. Quam,* 530 N.W.2d 337, 338 (N.D.1995) (quoting *Lima v. Chambers,* 657 P.2d 279, 281 (Utah 1982)). *See also* Francis M. Dougherty, Annotation, *Right of Insurer Issuing "Uninsured Motorist" Coverage to Intervene in Action by Insured Against Uninsured Motorist,* 35 A.L.R.4th 757 (1985) (citing cases).

As the Supreme Court of North Dakota recently pointed out, several considerations weigh in favor of intervention. *Fetch,* 530 N.W.2d at 338–41. In the absence of an opportunity for the insurer to intervene, any judgment obtained by the insured against the uninsured motorist will not bind the insurer. Thus, in addition to providing the insured an opportunity to protect its interests, participation by the insurer in the original suit avoids multiple suits and the potential harassment of the insured that might result, conserves judicial resources and prevents conflicting results.[6] *Id.*

Courts that deny participation by the insurer fear the potential conflicts of interest that may arise. *Allstate Insurance Co. v. Hunt,* 450 S.W.2d 668, 672–73 (Tex.Civ.App. 1970) (citing cases). In *Allstate Insurance Co. v. Hunt,* for example, the Texas Court of Civil Appeals identified conflicts that may arise between the insurer and insured, and between the insurer and the tortfeasor. 450 S.W.2d at 671–72. A conflict might arise between an insurer and insured if the uninsured motorist asserts a counterclaim against the insured. *Id.* at 672. The counterclaim would trigger the insurer's duty to defend, potentially placing the insurer on both sides

of the litigation. *Id.* Alternatively, a conflict might arise between the insurer and tortfeasor should the insured prevail. *Id.* In that case, the insurer, who has just defended the tortfeasor, may now seek to sue the tortfeasor pursuant to its subrogation rights. *Id.*

The Court, however, is persuaded by the reasoning of the balance of courts who, despite the potential for conflicts, still allow participation by the insurer on behalf of the uninsured motorist in a suit brought by the insured. *See, e.g., Vernon Fire & Casualty Co. v. Matney,* 170 Ind.App. 45, 351 N.E.2d 60, 65 n. 1 (1976); *Nationwide Mutual Insurance Co. v. Webb,* 291 Md. 721, 436 A.2d 465, 476–77 (1981); *Fetch,* 530 N.W.2d at 340–41; *Lima v. Chambers,* 657 P.2d 279, 285 n. 3 (Utah 1982). The Court notes that the potential for conflicts exists in other insurance settings. *Fetch,* 530 N.W.2d at 340 (citing *Heisner v. Jones,* 184 Neb. 602, 169 N.W.2d 606, 612 (1969)) (conflict may arise in common situation where single carrier covers two insureds involved in same accident); *Webb,* 436 A.2d at 477 (conflict may arise when tort plaintiff's claims against insured are both within and without the policy coverage). Moreover, denial of intervention will not necessarily prevent any conflict between the insurer and insured. *Matney,* 351 N.E.2d at 65. If the insurer is not allowed to participate, any judgment the insured obtains against the uninsured motorist will not bind the insurer. *Id.* Should the insurer dispute the liability, the insured may be forced to relitigate the issue, this time against the insurer. *Id.* The Court concludes that in the interest of fairness to the insured, judicial economy and consistency, the insurer should be allowed to participate on behalf of the uninsured motorist in a suit brought by the insured. *Fetch,* 530 N.W.2d at 341.

■ In this case, rather than merely intervene, Defendant entered into an agreement with the Puringtons to defend and indemnify them. Defendant's conduct does not differ significantly enough from pure intervention to constitute a breach as a matter of

---

6. The Court notes that allowing the insurer to participate on behalf of the uninsured motorist against the insured in no way relieves the insurer of its duty of good faith and fair dealing toward

the insured. *See, e.g., Stewart,* 597 N.E.2d at 371, 375–76 (insurer had right to intervene, but duty of good faith and fair dealing included informing insured of conditions in contract).

law. *See Stewart,* 597 N.E.2d at 371 (appropriate action for intervening insurer includes retaining counsel for uninsured driver in underlying tort action). Instead, whether Defendant breached the duty of good faith and fair dealing by its agreement with the Puringtons depends on whether Defendant establishes a reasonable basis for contesting the claim. *Bibeault,* 417 A.2d at 319; *Palmer,* 861 P.2d at 902. As indicated, Defendant asserts strong doubts as to Jason and Robert Puringtons' liability, which both of them contest. The Court is satisfied that Defendant has established a reasonable basis for participating on behalf of the Puringtons in Plaintiff's suit against them.

### D. Tortious Interference with a Contractual Relationship

▇▇ In Count II Plaintiff alleges that by refusing to consent to Plaintiff's proposed settlement with the Puringtons, Defendant tortiously interfered with a contractual relationship. In Maine, a person who by fraud or intimidation procures the breach of a contract that would have continued but for such wrongful interference can be liable for tortious interference. *Pombriant v. Blue Cross/ Blue Shield,* 562 A.2d 656, 659 (Me.1989). Defendant asserts that it neither intimidated the Puringtons, nor interfered with an existing contract.

Defendant supports its Motion for Summary Judgment on this claim with direct evidence, in the form of affidavits, from the Puringtons and their counsel. The affidavits of both Jason and Robert Purington clearly state that Defendant did not exert any improper influence over them, and both unequivocally deny liability for the underlying accident that injured Plaintiff. In his affidavit, Richard Hewes, counsel for the Puringtons, states that he negotiated the agreement between Defendant and the Puringtons because he believed it highly advantageous to them, and not because of any improper influence or intimidation. Like the Puringtons, Hewes unequivocally denies that Defendant exerted any improper influence over him or his clients.

Plaintiff attempts to establish a dispute of material fact from correspondence between Martica Douglas, the Purington's initial counsel, and Defendant, from which Plaintiff seeks an inference of intimidation. In July of 1994, Douglas informed Defendant, and counsel for the other parties in the accident, of the proposed settlement and asked for their opinion. Defendant responded that the Puringtons did not believe any negligence by them caused the accident, and, therefore, proposed the defense agreement which ultimately became a source of this suit. Douglas responded by rejecting Defendant's proposal, and questioned the basis of Defendant's objection to the proposed settlement agreement. Douglas took the position that Defendant had no viable subrogation rights to protect because the Puringtons had no substantial assets from which Defendant could satisfy a judgment against them. Defendant responded first, that neither of the Puringtons bore responsibility for the accident, and second, that Defendant had viable subrogation rights due to the fact that it would have 20 years to satisfy any judgment it obtained against the Puringtons.

▇▇ Plaintiff characterizes Defendant's correspondence with Martica Douglas as a thinly veiled threat to sue the Puringtons, and asks the Court to infer intimidation sufficient to support his tortious interference claim from that correspondence. To defeat a Motion for Summary Judgment, the nonmoving party must present facts that demonstrate a genuine issue for trial. *LeBlanc v. Great American Insurance Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). To the extent the nonmoving party relies on inferences, they must be reasonable and not improbable. *Rubinovitz v. Rogato,* 60 F.3d 906, 909 (1st Cir.1995). A reliable inference must flow rationally from the underlying facts, meaning that it "must ascend to what common sense and human experience indicate is an acceptable level of probability." *Id.* at 911.

The inference Plaintiff seeks does not meet that standard. At best Plaintiff offers a remote and attenuated inference of intimidation deriving from correspondence between counsel regarding potential settlement of Plaintiff's claim. By contrast, the

Puringtons and their attorney have, in sworn affidavits, clearly and expressly denied both improper influence or intimidation by Defendant, and liability for the underlying accident that injured Plaintiff. Rather than "flowing rationally from the underlying facts" the inference Plaintiff seeks "rests on a 'tenuous insinuation.'" *Rubinovitz*, 60 F.3d at 911 (quoting *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743 (1st Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995)). As such it fails to support a competing version of the truth that requires resolution by a factfinder at trial.[7] *LeBlanc*, 6 F.3d at 841. Accordingly, the Court grants Summary Judgment for Defendant on Count II.

### E. Punitive Damages

In Count III, Plaintiff seeks punitive damages. Plaintiff bases Count III on Count II, his tortious interference claim. Having granted summary judgment in favor of Defendant on Count II, the Court also grants summary judgment on Plaintiff's punitive damages claim, Count III.

### Disposition

The Court *GRANTS* Summary Judgment for Defendant on all Counts.

*SO ORDERED.*

---

7. Having found the absence of intimidation, a necessary element of tortious interference, the Court does not reach the issue of whether the proposed settlement agreement between Plaintiff and the Puringtons constitutes a contract for the purposes of tortious interference.