NATIONWIDE MUTUAL INSURANCE
COMPANY, Appellant,

v.

Henry PATTERSON, Appellee.

No. 03–97–00400–CV.

Court of Appeals of Texas,
Austin.

Feb. 20, 1998.

Rehearing Overruled March 26, 1998.

Joe Horlen, Horlen, Holt & Hollas, P.L.L.C., College Station, for Appellant.

Mickey J. Blanks, Blanks, Greenfield & Rhodes, Temple, for Appellee.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

POWERS, Justice.

Nationwide Mutual Insurance Company appeals from a summary judgment recovered by Henry Patterson. We will affirm the judgment.

### THE CONTROVERSY

Patterson drove an automobile involved in a collision with William Presley Brown, Jr., an uninsured motorist. Patterson's automobile was covered by a policy of insurance written and issued by Nationwide in North Carolina. The policy included uninsured-motorist coverage in the amount of $50,000. Patterson and two passengers sustained injuries in the collision.[1]

After Nationwide refused to pay Patterson under his uninsured-motorist coverage, he

---

1. The two passengers subsequently settled and compromised their claims against Nationwide

sued Brown and Nationwide in an original petition alleging against Brown a cause of action for negligence and against Nationwide a cause of action on the policy or contract and a cause of action for breach of a duty of good faith and fair dealing. Nationwide, after service of citation, appeared and answered by a general denial then moved immediately for severance of Patterson's cause of action for breach of a duty of good faith and fair dealing. The trial court ordered the severance a week later. The present appeal invokes only Patterson's contract action.

Brown, the uninsured motorist, failed to appear or answer after service and return of citation. Approximately eleven months after filing suit, Patterson obtained against Brown an interlocutory default judgment for $50,000 after proving compensatory damages in that amount. After obtaining the default judgment, Patterson in a second amended original petition alleged again against Nationwide his contract cause of action under the uninsured-motorist provision of the policy. In a fourth amended original answer, Nationwide interposed a general denial and a plea that Patterson's injuries were proximately caused, in whole or in part, by his own negligence, and prayed that Patterson take nothing by his claim. In this state of the pleadings, Patterson recovered a final summary judgment against Nationwide and Brown, jointly and severally, in the amount of $50,000. Nationwide appeals from the judgment.

## DISCUSSION AND HOLDINGS

■ In point of error two, Nationwide complains Patterson was not entitled to judg-

ment as a matter of law, on his contract claim, because he failed to comply with the following policy provision: "Any judgment for damages arising out of a suit is not binding on us unless we have been served with a copy of the summons, complaint, or other process against the uninsured motorist." The purpose of the provision is to effectuate North Carolina law that secures certain elections and protections for the uninsured-motorist carrier.[2]

From the record it appears Nationwide was served with a citation to which was attached a copy of Patterson's original petition alleging a cause of action against Brown for negligence and causes of action against Nationwide on the insurance contract and for breach of a duty of good faith and fair dealing. The citation instrument describes the lawsuit by its style: "Henry Patterson Et Al Plaintiff, VS. Nationwide Mutual Ins. Co. Et Al Defendant." The citation instrument does not name Brown as a defendant sued by Patterson, save indirectly by the Latin abbreviation "et al" indicating another defendant. From this failure to designate Brown in the citation, by name, Nationwide argues "[i]t necessarily follows ... that Nationwide was served with a lawsuit [sic] against *Nationwide*, which it duly answered; Nationwide was *not* served with a lawsuit *against the uninsured motorist*, and therefore, it is not bound to the default judgment under the policy" (emphasis in original).

■ Although Nationwide does not mention the matter, Rule 99 required that the

---

and their actions against Nationwide were dismissed.

2. The policy was written and issued in North Carolina. The North Carolina Motor Vehicle Safety and Responsibility Act provides as follows:

> The insurer shall be bound by a final judgment taken by the insured against an uninsured motorist *if the insurer has been served* with copy of the summons, complaint or other process *in the action against the uninsured motorist ....* The insurer, upon being served as herein provided, shall be a party to the action between the insured and the uninsured motorist though not named in the caption of the pleadings and may defend the suit in the name of the unin-

> sured motorist *or in its own name ....* The consent of the insurer shall not be required for the initiation of a suit against the uninsured motorist: Provided, however, no action shall be initiated by the insured until 60 days following the posting of notice to the insurer.... *No default judgment shall be entered when the insurer has timely filed an answer* or other pleading as required by law. The failure to post notice to the insurer 60 days in advance of the initiation of the suit shall not be grounds for dismissal of the action, but shall automatically extend the time for the filing of an answer or other pleadings to 60 days after the time of service ... on the insurer.

N.C. Gen.Stat. § 20–279.21(b)(3)a (1993) (emphasis added).

citation "show names of parties." Tex.R. Civ. P. 99. Any defect of form in the citation *as process* was waived, however, by Nationwide's voluntary general appearance resulting from its filing a general denial. Tex.R. Civ. P. 121. The defect in the citation claimed by Nationwide as a *policy defense*—a failure to serve Nationwide with a copy of the citation served Brown—was waived by Nationwide's filing an unconditional general denial of coverage and liability and an amended petition that repeated the general denial and added an affirmative plea that denied coverage because Patterson's injuries resulted from his own negligence in whole or in part. *See Ford v. State Farm Mut. Auto. Ins. Co.,* 550 S.W.2d 663, 666 (Tex.1977) (insurer's unconditional denial of liability under uninsured-motorist provisions of policy constituted waiver of policy provision requiring insurer's consent before insured settled with third party). We overrule point of error two.

■■■ In point of error one, Nationwide complains the trial court erred in granting summary judgment because, under Texas law, Nationwide was not permitted to defend the uninsured motorist (Brown) and prevent a default judgment being taken against him. We disagree with Nationwide's statement of Texas law. As a presumption, it is true, the existence of conflicting interests and fiduciary duties precludes an insurer from defending an uninsured motorist against the company's own insured.[3] *See Allstate Ins. Co. v. Hunt,* 450 S.W.2d 668 (Tex.Civ.App.—Houston [14th Dist.] 1970), *aff'd,* 469 S.W.2d 151 (Tex.1971). The prohibition, however, is not absolute. As indicated by the supreme court in *Hunt:*

> Our conclusion is that it should be left to the discretion of the trial court to pass upon the disqualification or conflict of interest, with the burden being upon the insurance company to show no substantial conflict of interest. We hold that the trial court did not abuse its discretion in this case.

There may be other instances where the insured motorist is clearly at fault and the insurance company has not, in fact, obtained confidential information from its insured [as it did in *Hunt* ]. The lack of substantial conflict of interest, and the right of the insurance company to protect itself, would weigh on the side of allowing it to participate in the trial on the side of the uninsured motorist.

469 S.W.2d at 153. *Hunt* thus creates a presumption that a conflict of interest precludes the insurer from acting against its insured's interest, but allows the insurer to do so on a proper showing.

Patterson obtained in November 1995 an interlocutory default judgment against Brown following a hearing at which Nationwide appeared pursuant to notice. In April 1997 Patterson moved for summary judgment on his contract claim against Nationwide. Nationwide filed in the same month a response to Patterson's motion contending the trial court should overrule the motion because the company could not defend Brown under Texas law and "should not now be penalized by being bound to a judgment that it could not defend against."

Nothing in the summary judgment record indicates that Nationwide invoked, at any time, the trial judge's discretion to allow Nationwide to defend against Patterson's claim because circumstances, such as those suggested in *Hunt,* resulted in an attenuation of the conflict of interests that ordinarily precludes an insurer's defending against an insured's claim. Instead, as indicated by Nationwide's response to Patterson's motion for summary judgment, the company simply assumed Nationwide could not defend against Patterson's claim under any circumstances and could not, therefore, prove the company's allegations that Patterson's negligence was a proximate cause, in whole or in part, of his injuries. In this state of the summary-judgment record, the trial court was bound

---

**3.** An insurer and its insured ordinarily have parallel interests. These interests come into conflict under the uninsured-motorist coverage that may be included in an automobile-liability policy. The matter is fully and expertly discussed by Justice Sam D. Johnson in *Allstate Insurance*

*Company v. Hunt,* 450 S.W.2d 668 (Tex.Civ. App.—Houston [14th Dist.] 1970), *aff'd* 469 S.W.2d 151 (Tex.1971). *See also* John Alan Appleman and Jean Appleman, *Insurance Law and Practice* § 5089.55 (1981). We need not repeat here the details of the conflict.

by the *Hunt* presumption and did not err in sustaining Patterson's motion for summary judgment. We hold accordingly and overrule point of error two.

In point of error three, Nationwide contends it "should not be bound by the default judgment against" Brown because Texas law governed the case under choice-of-law principles and precluded Nationwide's defense against Patterson's claims. The parties agree that Texas law governed the case.[4] As stated above, *Hunt* did not establish an absolute rule that an insurer may not defend against its own insured; *Hunt* placed the matter in the trial judge's discretion, to be exercised according to the circumstances under a presumption that the insurer was not entitled to defend against its insured. Nationwide never invoked that discretion and the trial judge was therefore bound by the presumption.[5] We overrule the point of error.

Finding no error, we affirm the trial-court judgment.

---

4. The Texas Insurance Code states:

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

Tex. Ins.Code Ann. art. 21.42 (West 1981). This statute applies to automobile insurance contracts, *Gulf Ins. Co. v. Plasky*, 326 S.W.2d 216, 220 (Tex.Civ.App.—Austin 1959), *rev'd on other grounds*, 160 Tex. 612, 335 S.W.2d 581 (1960), and has been held constitutional. *Austin Bldg. Co. v. National Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex.1968); *International Brotherhood of Boilermakers, Iron Shipbuilders, and Helpers of America v. Huval*, 140 Tex. 21, 166 S.W.2d 107, 112 (1942); *see also American Home Assurance Co. v. Safway Steel Prods. Co., A Div. Of Figgie Int'l Inc.*, 743 S.W.2d 693, 696 (Tex.App.—Austin 1987, writ denied). It is undisputed that Nationwide is a company doing business in the State of Texas. Furthermore, it is undisputed that at the time of the accident Patterson was an inhabitant of Texas. Under the terms of the statute, therefore, Texas law properly governs the dispute.

5. An insurance company may protect itself contractually in Texas by including in its policy a "consent" clause which requires an insured to obtain the consent of the company before suing an uninsured motorist. If such a clause is included in the insurance contract, the insurance company will not be bound by any judgment against the uninsured unless the company expressly *consents* to the suit. *See State Farm Mut. Auto. Ins. Co. v. Azima*, 896 S.W.2d 177, 178 (Tex.1995); *Criterion Ins. Co. v. Brown*, 469 S.W.2d 484, 485 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.). The inclusion of a consent clause in policies drafted in Texas is mandated by the Texas Insurance Board. *See* Tex. Ins. Code Ann. art. 5.06 (West Supp.1998); Texas Ins. Board *Texas Auto Manual*, (1992). "The purpose of requiring the carrier's written consent to sue is to protect the carrier from liability arising from default judgments against an uninsured motorist or from insubstantial defense of the uninsured motorist." *Azima*, 896 S.W.2d at 178. Patterson's policy did not include such a clause.